DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the Lucas County Court of Common Pleas, Juvenile Division, which entered judgment terminating the parental rights of appellant, Steven F., and awarding permanent custody of his minor child, Danielle E., to Lucas County Children's Services ("LCCS"). For the following reasons, we affirm the trial court's judgment.
 {¶ 2} On June 2, 2004, LCCS filed an original complaint for permanent custody of Danielle. The complaint alleged that Danielle's mother, Lula E., had THC (marijuana) in her system at the time of Danielle's birth and had a history of drug abuse and neglect of her children. The complaint also alleged that Lula lost permanent custody to LCCS of three children, one of whom was also appellant's child. Lula also surrendered a child to a private adoption agency and legal custody of seven of her children was awarded to relatives.
 {¶ 3} Also on June 2, 2004, the trial court conducted a shelter care hearing and temporary custody of Danielle was awarded to LCCS. Through subsequent genetic testing, appellant was determined to be Danielle's natural father.
 {¶ 4} On October 18, 2004, a hearing was held on the permanent custody complaint. At that time, the trial court was advised that Lula wished to agree to the finding of dependency and neglect and stipulate to a permanent custody disposition. After determining that Lula knowingly and voluntarily wished to relinquish her parental rights, the court found by clear and convincing evidence that the child should not be returned to her mother and that it was in the best interest of Danielle that LCCS be awarded permanent custody.
 {¶ 5} Thereafter, the matter proceeded to the adjudication on behalf of appellant. LCCS caseworker, Mary Bohnett, testified that she did not have the opportunity to meet appellant on the case and that at the time the complaint was filed, appellant was serving a criminal sentence at the Correctional Treatment Facility ("CTF") located in Toledo, Lucas County, Ohio, and was receiving treatment for substance abuse.
 {¶ 6} According to Bohnett, Lula stated that at that time, appellant was unable to care for Danielle because he was incarcerated. Lula stated that appellant was trying to overcome his addiction and that he had committed forgery. Lula told Bohnett that when she and appellant use drugs together he becomes domestically violent.
 {¶ 7} During cross-examination, Bohnett acknowledged that although she did not see him, she was told that appellant had been at the hospital at the time of Danielle's birth. Bohnett was not familiar with the treatment appellant received at CTF and had not received any records regarding the programs he had completed. LCCS then admitted three composite exhibits into evidence. Exhibit 1 included various journal entries involving Lula's other children; Exhibit 2 were the police records of both Lula and appellant; and Exhibit 3 contained Danielle's hospital records. The court then adjudicated Danielle dependent and neglected, as to appellant, and proceeded to disposition.
 {¶ 8} Tamara Mitchell testified that she was the ongoing caseworker assigned to Danielle's case. Mitchell met with appellant on October 8, 2004, at her office. Appellant was on work release at that time and Mitchell facilitated the meeting through his counselor. Mitchell testified that LCCS has had prior involvement with appellant and he was named the father of two of Lula's children, one which was adopted out by LCCS and one who remains in his maternal grandmother's legal custody.
 {¶ 9} According to Mitchell, appellant has several other children and was able to provide a list of their sexes and approximate ages. Mitchell testified that appellant named six children and that none of the children were in his custody.
 {¶ 10} Mitchell informed appellant that LCCS was seeking permanent custody of Danielle so she could be adopted; appellant did not agree with the plan. Appellant stated that he had frequent contact with Lula and that she had shown him pictures of Danielle. However, Mitchell testified that according to Lula, appellant was not in a stable enough position to care for his daughter. Lula told Mitchell that she and appellant use drugs together. Based on LCCS's extensive history with appellant and his other children and his substance abuse history, Mitchell recommended that the agency be awarded permanent custody.
 {¶ 11} Mitchell responded negatively when cross-examined as to whether she received information from CTF regarding the programs appellant completed. Mitchell acknowledged that in order to progress to the work release phase, appellant must have had some success at CTF. Mitchell testified that she reviewed appellant's criminal history and that there was a charge but not a conviction for domestic violence.
 {¶ 12} Mitchell surmised that even if appellant had completed a domestic violence program and a substance abuse program, she still has concerns based upon appellant's lengthy criminal and substance abuse history and the fact that he neither has contact with nor supports his other children. According to Mitchell, appellant provided no evidence that he had changed.
 {¶ 13} Guardian ad litem, Maria Gonzalez, testified next. Gonzalez stated that she visited appellant at CTF on July 9, 2004. At that time, appellant believed that Lula wished to be reunited with Danielle; appellant expressed his desire to raise Danielle as a couple. Gonzalez testified that appellant told her that, in addition to Danielle, he and Lula had three other children together. Gonzalez did indicate that, according to appellant, he was paying child support for one of his children.
 {¶ 14} Gonzalez testified that Danielle is very happy and healthy and relates well with her foster parents, who wish to adopt her, and have already adopted her biological brother. Gonzalez stated that even though appellant has good intentions, she believes that it is in Danielle's best interest to award LCCS permanent custody so that she may be adopted by her foster parents.
 {¶ 15} Appellant initially testified on cross-examination. Appellant stated that he was in the work release program until November 14, 2004, and that he had been in CTF since June 1, 2004, after turning himself in. Appellant testified that he has four children with Lula, but as to at least one he was not sure if he was the father because he had never been tested. He never paid child support for any of these children and they were never in his care or custody.
 {¶ 16} Appellant testified that during the three and one-half months he was in CTF he was not permitted to use the telephone. Appellant did correspond with Lula by letter and knew that Danielle was in LCCS's custody. Appellant testified that once he was in work release he did not contact the caseworker to inquire about Danielle's welfare.
 {¶ 17} Appellant then testified on his own behalf; he stated that while he was in CTF he attended parenting, domestic violence, anger management and problem solving classes in addition to the substance abuse programs. Appellant testified that he has a job at Manhattan's Café and works approximately 30 hours per week. Appellant stated that he pays rent to reside at his sister's house and that she was supportive of his efforts.
 {¶ 18} Appellant admitted that he had made some bad choices but indicated that he has learned from his past. Appellant stated that he loves Danielle and desires the opportunity to raise her.
 {¶ 19} Regarding his substance abuse history, appellant stated that at the time he was sent to CTF, he had been drug and alcohol free for four years. According to appellant, he agreed to go to CTF in lieu of a potentially lengthy prison sentence. Appellant stated that if he were awarded custody of Danielle, he would remain at his sister's house. Appellant did admit that when his sister volunteered to help with Danielle, she believed that appellant and Lula would be raising the child; however, appellant still believed that she would be supportive.
 {¶ 20} During further cross-examination, appellant was questioned regarding his contention that he had been drug and alcohol free for four years. Appellant did acknowledge Lula's claims that they used drugs together and that this was the reason she could not be with him. Appellant was also questioned regarding his lack of commitment with his other children.
 {¶ 21} On further direct examination, appellant stated that as to two of the four children he has with Lula, he was only told that he was the father, no genetic testing was done. Appellant also testified that he has a relationship with his son who is living with Lula's mother. Appellant stated that he loves being with children.
 {¶ 22} Following the hearing, the trial court concluded that under R.C. 2151.414(E)(4), appellant demonstrated a lack of commitment to the child and that under R.C. 2151.414(E)(16), appellant's current responsibilities dictate that the child cannot be placed with appellant within a reasonable time. The court further found that, under R.C.2151.414(E)(11), appellant has had his parental rights terminated with regard to a sibling of the child at issue. Finally, the court determined that it was in Danielle's best interest to award permanent custody to LCCS. This appeal followed.
 {¶ 23} Appellant raises the following three assignments of error:
 {¶ 24} "I. That the juvenile court erred in that the evidence lacked the clear and convincing standard that Steven [F.], father has demonstrated a lack of commitment to the child, pursuant to O.R.C.2151.414(E)(4).
 {¶ 25} "II. That the juvenile court erred in that the evidence lacked the clear and convincing standard that the minor child could not be placed with Steven [F.], father within a reasonable period of time pursuant to O.R.C. 2151.414(E)(16).
 {¶ 26} "III. That the juvenile court erred in that LCCS was not required to make reasonable efforts to reunify simply because the father, Steven [F.]'s rights were terminated with respect to a sibling of the minor child."
 {¶ 27} Appellant's first and second assignments of error argue that the trial court's judgment was not supported by clear and convincing evidence; therefore, we shall jointly address them.
 {¶ 28} R.C. 2151.353(A) provides, in relevant part:
 {¶ 29} "(A) If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:
 {¶ 30} "* * *.
 {¶ 31} " (4) Commit the child to the permanent custody of a public children services agency or private child placing agency, if the court determines in accordance with division (E) of section 2151.414
[2151.41.4] of the Revised Code that the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent and determines in accordance with division (D) of section 2151.414 [2151.41.4] of the Revised Code that the permanent commitment is in the best interest of the child. * * *."
 {¶ 32} The factors in R.C. 2151.414(E), which were relied upon by the trial court provide:
 {¶ 33} "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court shall consider all the relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
 {¶ 34} "* * *.
 {¶ 35} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 36} "* * *.
 {¶ 37} "(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 [2151.35.3] or 2151.415 [2151.41.5] of the Revised Code with respect to a sibling of the child.
 {¶ 38} "* * *.
 {¶ 39} "(16) Any other factor the court considers relevant."
 {¶ 40} As set forth in the above-quoted statutory sections, the trial court's findings must be supported by clear and convincing evidence. The Ohio Supreme Court has held that clear and convincing evidence is:
 {¶ 41} "* * * that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford
(1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 42} In his first and second assignments of error, appellant contends that the court erroneously found that, under R.C. 2151.414(E)(4), appellant demonstrated a lack of commitment toward the child and that, under R.C. 2151.414(E)(16), the court improperly considered relevant the fact that appellant has several responsibilities including maintaining sobriety, completing his obligations to the criminal justice system, maintaining his job, and any other child support obligations he may have.
 {¶ 43} Upon review, we conclude that the court's finding under R.C.2151.414(E)(4) is supported by clear and convincing evidence. Appellant admitted that once he was released from CTF and on work release, he failed to contact LCCS regarding the welfare of Danielle despite his ability to do so. Further, under R.C. 2151.414(E)(16), we cannot say that the court erred when it concluded that appellant's repeated problems with chemical dependency, his criminal history, his obligations to his other children, and his new job would require his attention "over a long period of time." Accordingly, we find that appellant's first and second assignments of error are not well-taken.
 {¶ 44} Appellant's third assignment of error disputes the court's finding under R.C. 2151.414(E)(11) that appellant had his parental rights terminated with respect to a sibling of Danielle. Appellant contends that because he was never determined to be the legal father of any of the siblings, his parental rights could not have been involuntarily terminated. Attached as a trial exhibit is the May 11, 1999 judgment entry terminating appellant and Lula's parental rights as to Danielle's sibling Camille. The judgment states, in part: "All parental rights of Lula [E.] and Steven [F.] are hereby terminated." More importantly, appellant did not dispute that he is Camille's father. Accordingly, we find that sufficient evidence exists to support the court's finding. Appellant's third assignment of error is not well-taken.
 {¶ 45} On consideration whereof, we find that substantial justice was done the party complaining, and the decision of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the court costs of this appeal.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Parish, J., Concur.