OPINION
 A. Facts Procedural Posture {¶ 1} Father-appellant, James Lawson (hereinafter "Lawson"), and mother-appellant, Menyon Matthews (hereinafter "Matthews"), appeal the judgment of the Marion County Court of Common Pleas granting the Marion *Page 3 
County Children's Services Board's (hereinafter "CSB") motion for permanent custody of Thomas and Timothy Matthews (hereinafter "Tommy" and "Timothy"). Matthews also appeals the trial court's termination of her parental rights with respect to her daughter, Mersaydeez Hall (hereinafter "Mersaydeez"). For reasons that follow, we affirm in Matthews' appeal as to Tommy and Timothy; dismiss Lawson's appeal as to Tommy but affirm as to Timothy; and reverse in Matthews' appeal as to Mersaydeez Hall.
 {¶ 2} Matthews has three children: Tommy (d.o.b. November 4, 1997), Timothy (d.o.b. January 21, 2001), and Mersaydeez (d.o.b. October 11, 2005). Ronald Clinger is the father of Tommy; Lawson is the father of Timothy; and Phillip Hall is the father of Mersaydeez.
 {¶ 3} On October 2, 2003, CSB opened its file on Tommy and Timothy after learning that the maternal grandmother, Diana Welch, sold drugs to an undercover informant in the presence of Matthews and the boys. At that time, Timothy was residing with his mother, Matthews, and Tommy was residing with Welch. Tommy has resided with Welch most of his life because Matthews was only seventeen when he was born.
 {¶ 4} The 2003 CSB complaint was later dismissed but subsequently re-filed on March 25, 2004. The complaint alleged one count of dependency under *Page 4 
R.C. 2151.04 and one count of neglect under R.C. 2151.03 against Matthews and Lawson for their care of Tommy and Timothy.
 {¶ 5} On August 23, 2004, the trial court granted CSB protective supervision of Tommy and Timothy but ordered that custody remain with Matthews. On October 21, 2004, the trial court granted Lawson supervised visitation contingent upon the modification of a civil protection order.
 {¶ 6} On February 10, 2005, CSB moved the court for emergency orders to grant temporary custody of Tommy and Timothy to Welch. On June 8, 2005, the trial court granted temporary custody of the boys to Welch, with protective supervision to remain with CSB.
 {¶ 7} On October 11, 2005, Mersaydeez was born. On October 20, 2005, Matthews filed a motion for custody of Tommy and Timothy. Welch was joined as a party on November 21, 2005. On December 12, 2005, the trial court held a hearing on the motion and determined that all motions were to continue, protective supervision should continue, and that prior orders were to remain in effect. All prior orders were renewed by judgment entry filed April 7, 2006. At that time, the trial court ordered Matthews to have visitation with the boys two to three times weekly; that the children receive their medication as prescribed; and that the children be evaluated for medication needs. *Page 5 
 {¶ 8} On May 5, 2006, CSB filed another complaint alleging that Tommy, Timothy, and Mersaydeez were abused, neglected, and dependant children along with a motion for emergency removal. The trial court granted emergency orders to place temporary custody of the children with CSB that same day.
 {¶ 9} On August 9, 2006, the complaints were dismissed for failure to prosecute within the ninety-day time limit. That same day, CSB filed new complaints with the same allegations that appeared in the May 5, 2006 complaint. The trial court sua sponte ordered that all orders were adopted by reference.
 {¶ 10} On October 6, 2006, the trial court found all three children to be dependant based on stipulation of the parties. CSB retained temporary custody of the children. Hall was ordered to complete parenting classes and granted increased visitation with his daughter, Mersaydeez.
 {¶ 11} On January 11, 2007, CSB filed a motion requesting a modification of temporary custody to permanent custody. On April 10, 2007, proof of publication as to Ronald Clinger was filed. On March 9, 2007, Lawson filed a motion for custody of Timothy. On April 12, 2007, Hall filed a motion requesting findings of fact and conclusions of law.
 {¶ 12} On April 16 and 17, 2007, the trial court held a hearing on CSB's motion for permanent custody. On April 20, 2007, the trial court ordered an incamera interview with Tommy and Timothy. The guardian ad litem filed a *Page 6 
dispositional report on April 25, 2007, recommending that CSB's motion as to Tommy and Timothy be granted, and that CSB's motion as to Mersaydeez be denied to give Hall an opportunity to provide a suitable home for his daughter.
 {¶ 13} On July 3, 2007, the trial court granted CSB's motion for permanent custody of Tommy and Timothy but denied CSB's motion as to Mersaydeez. On July 26, 2007, Matthews filed an appeal as to Tommy and Timothy — case number 9-07-28.
 {¶ 14} On August 8, 2007, the trial court filed three nunc pro tunc entries. One terminated Matthews' parental rights as to Timothy; one terminated Matthews' and Ronald Clinger's parental rights as to Tommy; and one terminated Matthew's but not Hall's parental rights as to Mersaydeez. On August 31, 2007, Matthews filed her appeal as to Mersaydeez — case number 9-07-34. Lawson filed his appeal on September 4, 2007 as to Tommy and Timothy — case number 9-07-29. On September 11, 2007, this Court consolidated case numbers 9-07-28, 9-07-29, and 9-07-34 for appeal.
 {¶ 15} Matthews and Lawson now appeal and both assert three assignments of error each. Since both parties raise similar assignments of error, we will discuss them together where appropriate. *Page 7 
 B. Standard of Review/ Rules of Law {¶ 16} Parents have a fundamental liberty interest in the care, custody, and management of their children. In re Murray (1990),52 Ohio St.3d 155, 157, 556 N.E.2d 1169, citing Santosky v. Kramer (1982),455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. The right to raise one's child[ren] is an "essential" and "basic civil right." Id., citingStanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208,31 L.Ed.2d 551; Meyer v. Nebraska (1923), 262 U.S. 390, 399, 43 S.Ct. 625,67 L.Ed. 1042. These principles form the foundation of child custody jurisprudence. Id.
 {¶ 17} Pursuant to R.C. 2151.413, an agency that has been granted temporary custody of a child that has not been abandoned or orphaned may seek permanent custody of that child. R.C. 2151.414(B) permits permanent custody be granted if the agency has shown by clear and convincing evidence that such action is in the "best interests of the child," and that any of the factors in division (B)(1) apply. In re Jackson, 3d Dist. No. 5-03-25, 2004-Ohio-542, ¶ 6.
 {¶ 18} To determine whether transferring permanent custody to the agency is in the `best interests of the child,' R.C. 2151.414(D) provides a non-exclusive list of factors for the trial court to consider:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home *Page 8 providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 {¶ 19} `Clear and convincing evidence' is more than a mere preponderance of the evidence, but not of such certainty as is required by `beyond a reasonable doubt' as in a criminal case; rather, it is evidence which provides the trier of fact with a firm belief or conviction as to the facts sought to be established. In re Meyer (1994),98 Ohio App.3d 189, 195, 648 N.E.2d 52, citing Cincinnati Bar Assn. v.Massengale (1991), 58 Ohio St.3d 121, 122, 568 N.E.2d 1222. Upon review, an appellate court "must examine the record and determine if the trier of fact had sufficient evidence before it to satisfy this burden of proof." Id., citing In re Adoption of Holcomb (1985), 18 Ohio St.3d 361,368, 481 N.E.2d 613. However, a reviewing court will not reverse a trial court's determination unless it *Page 9 
is unsupported by clear and convincing evidence. Id., citingHolcomb, 18 Ohio St.3d at 368; In re Adoption of Lay (1986),25 Ohio St.3d 41, 42, 495 N.E.2d 9.
 C. Analysis MATTHEWS' LAWSON'S ASSIGNMENT OF ERROR NO. I THE RECORD CONTAINS INSUFFICIENT EVIDENCE TO PROVE CLEARLY AND CONVINCINGLY THAT IT WAS IN THE CHILDREN'S BEST INTERESTS TO BE PLACED WITH APPELLEE'S PERMANENT CUSTODY, AND THAT THEY COULD NOT BE PLACED WITH EITHER PARENT WITHIN A REASONABLE TIME.
 {¶ 20} Matthews and Lawson, in their first assignments of error, both allege that the record contains insufficient evidence to prove clearly and convincingly that it was in Tommy's and Timothy's best interest to be placed in CSB's permanent custody, and that they could not be placed with either of them within a reasonable time. We find their argument lacks merit.
1. Trial Court Findings
 {¶ 21} The trial court herein reviewed the evidence and found that it was in the best interests of Tommy and Timothy that CSB be granted permanent custody, and that neither child could be placed with either Matthews or Lawson within a reasonable time or should not be placed with either pursuant to R.C. 2151.414(B)(1)(a). (Jul. 5, 2007 JE at 3). In determining that permanent custody *Page 10 
with CSB was in the children's best interests, the trial court cited R.C. 2152.414(D)(4) (5); R.C. 2151.414(E)(1), (4), (16). (Id. at 3-4).
 {¶ 22} The trial court made several findings of fact in support of these aforementioned conclusions of law. In support of its R.C. 2151.414(B)(1)(a) finding, the trial court cited findings of fact three, four, six, and seven that provide:
 3. Linda Umoh, the caseworker, testified that the natural mother did not complete the case plan in that she did not complete counseling and was terminated by the counseling center in July, 2006; that she had no driver's license; that she had no job or means of income; that she refused drug screening without an excuse; that she failed to follow through with requirements after she says she will. Ms. Umoh also testified that she believed the mother understood what she was required do under the case plan.
 4. The natural mother, Menyon Matthews[, ] testified that she understood the case plan and knew what she needed to do; that she couldn't remember her last counseling session; that she didn't have a medical card; that she'd never had a driver's license; that she did refuse numerous drug tests; that many of her missed counseling sessions and other required appointments were because she had something else to do.
 6. James Lawson testified that he was aware of the requirements of the case plan but he didn't agree with it and did not think it should apply to him.
 7. George Goodman, counselor for Timmy Matthews[, ] testified that this child had ADD and may be bi-polar. He believes Timmy needs a secure, safe environment as insecurity in the home can frustrate any child. *Page 11 
In support of its R.C. 2151.414(D)(4) (5) and 2151.414(E)(1), (4), (16) conclusions of law, the trial court cited findings of fact one, two, four, five, and seven. Findings of fact one, two, and five state:
 1. Dr. Diana Wilkerson testified that the natural mother had a lot of emotional problems that get in the way of good judgment in parenting children. Mother has an average ability to set boundaries but her notion of acceptable behavior is inadequate. Her opinion was that the mother was too unstable to raise children.
 2. Dr. Wilkerson testified that her examination of James Lawson revealed a low average IQ; that he is an impulse [sic] individual who doesn't think before he acts; that he understands violence but can't control it; that he believes that he and the mother will remain in a relationship although he knows they shouldn't; that he can't be a good parent.
 5. The testimony and evidence presented a pattern of sporadic visitation with the children by Menyon Matthews, James Lawson, and Phillip Hall.
2. Standing
 {¶ 23} As an initial matter, Lawson is challenging the trial court's ruling as to both Tommy and Timothy. Tommy, however, is not Lawson's biological child; consequently, Lawson does not have standing to challenge the trial court's termination of parental rights as to Tommy. (Apr. 16, 2007 T. at 278); In re A.S., 9th Dist. No. 23456,2007-Ohio-2195, ¶ 9. Therefore, this court must dismiss Lawson from case no. 9-07-29, pertaining to Tommy Matthews, and will address *Page 12 
Lawson's arguments only in the context of his biological son Timothy and case no. 9-07-28.
3. Trial Court's R.C. 2151.414(D) Analysis
 {¶ 24} Matthews first argues that the trial court failed to consider each of the R.C. 2151.414(D) factors when rendering its judgment as required. "In rendering its judgment, the trial court must either specifically address each of the required considerations set forth in R.C. 2151.414(D) in its judgment entry, or otherwise provide someaffirmative indication in the record that the court has considered the specific factors listed in R.C. 2151.414(D)." (Emphasis added). In reMcMillin, 171 Ohio App.3d 686, 2007-Ohio-2046, ¶ 12, citing In reD.H., 3d Dist. No. 9-06-57, 2007-Ohio-1762, ¶ 19. In this case, the trial court did not specifically address each of the required factors but only those factors relevant to the evidence presented. Reviewing the journal entry herein, we are persuaded that the trial court's application of specific factors with citations to its findings of fact is an "affirmative indication" that the court has considered the R.C.2151.414(D) factors. Matthews' argument is, therefore, without merit.
4. Trial Court's R.C. 2151.414(E) Findings
 {¶ 25} Matthews and Lawson also argue that the trial court's finding that the children could not be placed with either of them within a reasonable time or should not be placed with either of them was not supported by clear and *Page 13 
convincing evidence. Matthews argues that she could have resolved her issues within six months to a year. Lawson argues that he was visiting the children regularly, except when he was incarcerated; that he loved his children; and that he was cooperating with CSB. These arguments also lack merit.
 {¶ 26} R.C. 2151.414(E) provides:
 If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent:
(Emphasis added). According to the statute's plain language, if the trial court determines one of the R.C. 2151.414(E) factors exist, it "shall" enter a finding that the child cannot be placed with either parent. Here, the trial court concluded that (E) factors one, four, and sixteen existed, and the record contains clear and convincing evidence to support the trial court's findings.
 {¶ 27} R.C. 2151.414(E)(1) allows the court to consider whether "the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home." The court may look to "parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources" when rendering its determination as to subsection (E)(1). The major conditions causing Tommy and *Page 14 
Timothy to be removed from the home were as follows: (1) drug and alcohol abuse by both Matthews and Lawson; (2) Matthews is stressed, which affects her ability to supervise, protect and parent the children; (3) Hall had a history of domestic violence and drug and alcohol abuse; and (4) that the children were too young and unable to protect themselves in these dangerous conditions. (Apr. 16, 2007 T. at 77-78).
 {¶ 28} In this case, Dr. Wilkerson testified that Matthews would likely not follow through on the case plan. (Id. at 41). Caseworker Umoh's testimony confirmed Dr. Wilkerson's opinion. Umoh testified that Matthews did not complete her counseling and missed psychiatrist and psychologist appointments (Id. at 83-85, 153); was self-medicating with drugs and alcohol (Id. at 86); and missed four home visits (Id. at 88). Umoh further testified that Matthews was not taking requested drug screens, and, of the four taken, two were positive for marijuana (Id. at 105); took twenty prescription pills in what appeared to be an attempted suicide (Id. at 120-21); and basically "seemed like she had given up." (Id. at 123). Likewise, Marion Area Counseling Center social worker Debbie Merold testified that Matthews missed many appointments (Id. at 238); was not meeting her counseling goals (Id. at 240); had suicidal thoughts (Id. at 242); and was not interested in therapy to treat these ideations (Id. at 244). *Page 15 
 {¶ 29} Matthews testified that she understood the CSB case plan. (Id. at 287). Matthews admitted that she was not taking prescribed medications. (Id. at 288). When asked why she was not taking her medications, Matthews indicated that she had not made a doctors appointment and that she did not have a medical prescription card. (Id. at 290). When pressed, Matthews testified that she subsequently obtained a new prescription card but lost it. (Id. at 290-91). When asked why she missed her appointments with Dr. McIntire, who was assigned prior to Dr. Wilkerson, Matthews said she had psychological issues that prevented her from attending the appointments. (Id. at 293). Matthews also admitted that she failed to appear for drug testing fourteen times. (Id. at 295). Matthews was reluctant to claim that she was ready to complete the case plan. Matthews stated, "I didn't testify that I am ready to complete it, I said I was able to." (Id. at 297).
 {¶ 30} Reviewing all this evidence, the trial court had clear and convincing evidence to establish that Matthews had failed to remedy her drug, alcohol, and stress problems, which led to the children being removed.
 {¶ 31} The trial court also had clear and convincing evidence to establish that Lawson failed to remedy the conditions, which led to the children being removed. Dr. Wilkerson testified that Lawson, "understands that he had been violent" but doesn't have control over it "no matter how many times he's been arrested." (Id. at 44). According to Dr. Wilkerson, even though Lawson *Page 16 
understands that he should not be with Matthews because their violent history, Lawson indicated that he and Matthews would likely remain together. (Id.). Caseworker Umoh testified that Lawson did not make his appointments with Dr. McIntire (Id. at 85); his visitation with the children and appointments with CSB varied upon whether he was incarcerated at the time (Id. at 89); and he refused one drug test, admitted to using drugs prior to two tests, and failed to appear for six tests (Id. at 106). She further indicated that he violated the CSB safety plan multiple times (Id. at 117), and he violated his probation by not completing a halfway house program and testing positive for drugs. (Id. at 126).
 {¶ 32} Lawson testified that he was convicted a third time of domestic violence in 2006-2007 for physically assaulting Matthews. (Id. at 271, 274-75). He admitted that he did not complete the half-way house program and violated his community control sanctions. (Id. at 273). He also admitted to multiple OVI convictions and to driving while under suspension. (Id. at 282-83). Lawson did not recall refusing drug tests but did remember that he admitted to smoking marijuana prior to taking at least one test. (Id. at 282). Lawson further admitted continued problems failing drug tests ordered by other courts following his domestic violence convictions. (Id. at 284). When he was asked when he might be able to care for Timothy, Lawson said that he thought his judicial release was in *Page 17 
180 days, but if that was not the case, then he was uncertain when he could care for him. (Id. at 286).
 {¶ 33} Reviewing all of this evidence, the trial court had clear and convincing evidence that Lawson has failed to remedy his violent tendencies and drug and alcohol problems, which led to the children being removed from the home.
 {¶ 34} Consequently, the trial court had clear and convincing evidence to conclude that R.C. 2151.414(E)(1) was met; and therefore, it was required to enter a finding that the children could not be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(E). Since the trial court only needed to find one of the (E) factors existed, we need not further discuss factors four and sixteen found by the trial court. In re Carlos R, 6th Dist. No. L-07-1194, 2007-Ohio-6358, ¶ 38.
5. Trial Court's "Best Interests of the Child" Finding
 {¶ 35} Matthews and Lawson argue that the trial court's `best interests of the child' determination was not supported by clear and convincing evidence. We disagree.
 {¶ 36} In determining that permanent custody with CSB was in the children's best interests, the trial court cited R.C. 2151.414(D)(4) (5); R.C. 2151.414(E)(1), (4), (16). (Jul. 5, 2007 JE at 3). In support of its R.C. *Page 18 2151.414(B)(1)(a) finding, the trial court cited findings of fact three, four, six, and seven. Upon review of the record, we conclude that clear and convincing evidence existed to support the trial court's findings of fact in support if its `best interests of the child' conclusion of law. Therefore, the trial court did not err.
 {¶ 37} First, the trial court's findings of fact three and four concerning Matthews are supported by the evidence as previously discussed in § C4, supra. Second, the record indicates that Lawson testified that he was aware of the case plan but did not think it should apply to him. Lawson testified:
 Q: Did you ever agree to comply with the case plan?
 A: No, I have not.
 Q: Why?
 A: Because I do not agree with the case plan.
 Q: Why don't you agree with the case plan?
 A: Because I believe that Children Services took my children under false pretences.
(Apr. 17, 2007 T. at 330-31). Third, the record substantiates the trial court's factual finding that Timothy has ADD; may be bi-polar; and needs a secure, safe environment. (Apr. 16, 2007 T. at 135, 139).
 {¶ 38} Fourth, the record substantiates the trial court's R.C.2151.414(E)(16) finding that other factors were relevant. The trial court, again, noted that Matthews and Lawson have been uncooperative with CSB, which was substantiated in the record. (See § C4, supra). In addition, the trial court noted that Matthews was uncooperative with her attorney and the court, which demonstrated *Page 19 
a lack of interest in her children. (Apr. 16, 2007 T. at 8-9). Lawson, likewise, had a history of incarceration and subsequent community control violations, which the court cited as an indication that Lawson's inability to place his child's interests first. (Apr. 17, 2007 T. at 273, 284). Furthermore, a parent's criminal history and chemical dependency are relevant (E)(16) factors that a court may consider when deciding a child's best interests. In re Danielle E., 6th Dist. No. L-04-1339, 2005-Ohio-2349, ¶¶ 42-43; R.C. 2151.414(E)(13).
6. Conclusion
 {¶ 39} Reviewing all the evidence, we conclude that the trial court had sufficient evidence to determine that it was in the children's best interests to grant CSB permanent custody and that the children should not or could not be placed with either Lawson or Matthews within a reasonable time.
 {¶ 40} Matthews' and Lawson's first assignments of error are, therefore, overruled.
 MATTHEWS' LAWSON'S ASSIGNMENT OF ERROR NO. II THE DECISION OF THE FAMILY COURT IS CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 41} In addition to their insufficiency claims, Matthews and Lawson allege that the trial court's decision was against the manifest weight of the evidence. *Page 20 
 {¶ 42} This Court, however, has previously stated:
 The decision of a trier of fact relating to a motion for permanent custody of children will not be overturned, so long as the record contains competent credible evidence from which the trial court could have formed a firm belief or conviction that the essential statutory elements have been established. In the Matter of Lawson/Reid Children (April 18, 1997), Clark App. No. 96-CA-0010. Furthermore, it must be noted that this Court must defer to "the trial court's findings of fact and rely on its ability to evaluate the credibility of the witnesses." State v. Anderson (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034.
In re Franklin, 3d Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841, ¶ 21. As we have previously explained, the record in this case contains competent, credible evidence from which the trial court could have reached a firm belief or conviction as to the essential statutory elements. Consequently, we will not overturn the trial court's determination in this case.
 {¶ 43} Matthews' and Lawson's second assignments of error are, therefore, overruled.
 LAWSON'S ASSIGNMENT OF ERROR NO. III THE TRIAL COURT ERRED TO THE PREJUDICE OF RESPONDENT-APPELLANT BY ADMITTING CHARACTER EVIDENCE OVER HER [SIC] OBJECTION.
 {¶ 44} In his third and final assignment of error, Lawson argues that the trial court erred in admitting CSB exhibits four and six because their admission *Page 21 
violated Evid.R. 803(6) and 901. The State argues that the admission into evidence was proper. Lawson's argument lacks merit.
 {¶ 45} A trial court's decision to admit evidence will not be reversed absent a clear showing that the trial court abused its discretion and the defendant suffered material prejudice. In re Mick, 4th Dist. No. 05CA23, 2005-Ohio-4951, ¶ 16. Furthermore, Civ.R. 61 provides:
 No error in either the admission or the exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice.
`Abuse of discretion' implies that the court acted unreasonably, arbitrarily or unconscionably. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 46} Lawson alleges that the trial court erred by admitting CSB exhibits four and six into evidence; however, Lawson has not indicated how their admission has materially prejudiced him. Since Lawson failed to give any rationale underlying his claim of prejudice, we need not decide whether CSB exhibits four and six were properly admitted. In reMick, 2005-Ohio-4951, at ¶ 16. Furthermore, we are not persuaded that the trial court's action was inconsistent with justice or was an abuse of discretion since the exhibits' contents was presented to the court in testimonial form as well. Id.; Civ.R. 61. *Page 22 
 {¶ 47} Lawson's third assignment of error is, therefore, overruled.
 MATTHEWS' ASSIGNMENT OF ERROR NO. III THE TRIAL COURT ERRED TO THE PREJUDICE OF RESPONDENT-APPELLANT BY GRANTING CSB'S MOTION TO TERMINATE PARENTAL RIGHTS WITH RESPECT TO MERSAYDEEZ HALL.
 {¶ 48} In her third and final assignment of error, Matthews argues that the trial court was without authority under R.C. 2151.414(B)(2) to terminate her parental rights as to Mersaydeez when it determined that the child could be placed with Hall, Mersaydeez's father. Although we disagree that subsection (B)(2) is relevant to our disposition of this assignment of error, we nonetheless agree that the trial court lacked authority to terminate Matthews' parental rights.
 {¶ 49} On April 16-17, 2007, the trial court held a hearing for permanent custody pursuant to R.C. 2151.413(A) since CSB was previously granted temporary custody of Mersaydeez pursuant to an order under R.C.2151.353(A)(2). (October 6, 2006 JE). Therefore, the trial court was required to proceed under R.C. 2151.414(B)(1), not subsection (B)(2) as Matthews' argues. R.C. 2151.414(B)(1)(a) provides:
 * * * the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply: *Page 23 
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
 {¶ 50} The trial court agreed with the guardian ad litem's recommendation that Mersaydeez could be placed with her father, Hall; and thus, appropriately denied CSB's motion for permanent custody pursuant to R.C. 2151.414(B)(1)(a). (Jul. 3, 2007 JE at 2, 4). Following this judgment entry, however, the trial court issued a nunc pro tunc entry that provided:
 The Court having reviewed the judgment entry in this case on July 3, 2007, sua sponte it is hereby ORDERED NUNC PRO TUNC as follows:
 It is therefore ORDERED that the parental rights of the mother, Menyon Matthews, are terminated. The rights of the father, Phillip Hall, are not terminated and Temporary Care and Custody of the child, Mersaydeez Hall, is granted to Marion County Children Services.
(August 8, 2007 Nunc Pro Tunc JE). Even though the trial court found that Mersaydeez could be placed with Hall, it, nonetheless, terminated Matthews' parental rights as to Mersaydeez.
 {¶ 51} Our research has not revealed any cases where a termination of parental rights occurred when one parent was granted placement and CSB's motion for permanent custody was denied. Neither the trial court nor the State has *Page 24 
cited any statutory provisions or case law in support of the trial court's authority to terminate Matthews' parental rights in this situation. We conclude that the trial court was without authority to terminate Matthews' parental rights at this time.
 {¶ 52} Two important premises require this conclusion. First, the plain language of R.C. 2151.414(B)(1)(a), under which the trial court proceeded, does not provide for termination of parental rights when one parent is awarded placement and temporary care and custody remains with CSB. In addition, termination of parental rights is not necessary in this situation; and if not necessary, should not be ordered. In reD.A., 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, ¶ 11 ("The termination of parental rights should be an alternative of `last resort.'").
 {¶ 53} Second, parents have a fundamental liberty interest in the care, custody, and management of their children. In re Murray,52 Ohio St.3d at 157, citing Kramer, 745 U.S. at 753. To protect their fundamental liberty interest, `"parents must be afforded every procedural and substantive protection the law allows."' In re D.A.,2007-Ohio-1105, at ¶ 10, quoting In re Smith (1991), 77 Ohio App.3d 1,16, 601 N.E.2d 45. R.C. 2151.414 is the substantive law that provides parents with the due process of law required to protect their fundamental interest. Thus, when the trial court failed to follow R.C.2151.414(B)(1)(a) by ordering that *Page 25 
Matthews' parental rights be terminated, it failed to provide her with the law's substantive protections and due process of law.
 {¶ 54} For these reasons, Matthews' third assignment of error is sustained.
 {¶ 55} In conclusion, we dismiss Lawson from case no. 9-07-29 pertaining to Thomas Matthews for lack of standing. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court in case numbers 9-07-28 and 9-07-29 pertaining to Thomas and Timothy Matthews.
 {¶ 56} Having found error prejudicial to the appellant herein in the particulars assigned and argued, we reverse the judgment of the trial court in case number 9-07-34 pertaining to Mersaydeez Hall and remand for further proceedings consistent with this opinion.
Judgments Affirmed in Case Nos. 9-07-28 and
 9-07-29; Judgment Reversed and Cause
 Remanded in Case No. 9-07-34.
 ROGERS, P.J. and WILLAMOWSKI, J., concur. *Page 1