OPINION
{¶ 1} Appellant, Victoria Balderson ("Victoria"), appeals the August 11, 2006 judgment of the Common Pleas Court of Seneca County, Ohio, adjudicating M.T. a dependent child and continuing temporary custody of M.T. and J.T. to the Seneca County Department of Job and Family Services.
 {¶ 2} J.T. was born on March 31, 2005. The biological parents of J.T. are Victoria and Brandon Taylor ("Brandon"). On April 1, 2005, the Seneca County Department of Job and Family Services ("SCDJFS") filed a complaint seeking temporary custody of J.T. because there were reasonable grounds to believe that a parent had abused or neglected another child in the household and that this child was in danger of immediate or threatened physical or emotional harm. The Court of Common Pleas of Seneca County, Ohio ordered J.T. placed in the temporary custody of SCDJFS. On November 7, 2005, he was adjudicated a dependent child pursuant to R.C. 2151.04(D).
 {¶ 3} On February 6, 2006, M.T. was born to Victoria and Brandon. On February 6, 2006, the SCDJFS filed a complaint seeking temporary custody of M.T. for the same reasons established in J.T.'s complaint. The Court of Common Pleas of Seneca County, Ohio ordered M.T. placed in the temporary custody of SCDJFS.
 {¶ 4} Both J.T. and M.T. have been residing in the Ziegler foster home in the temporary custody of SCDJFS since shortly after their birth. M.T. and J.T. have two other siblings: (1) K.A., who is the biological child of Joseph Adams and Victoria; and (2) R.S., who is the child of Charles Thomas, Jr. and Victoria. R.S. resides with his father, Charles Thomas, Jr. K.A. was adopted by the Ziegler family after the parental rights of Victoria and Joseph Adams were involuntarily terminated in Seneca County Juvenile Court Case No. 20350005 on July 15, 2004.
 {¶ 5} K.A. was adjudicated a neglected child pursuant to R.C.2151.03(A)(3) on June 27, 2003. R.S. was adjudicated a dependent child pursuant to R.C. 2151.04(C) on June 27, 2003. J.T. was adjudicated a dependent child pursuant to R.C. 2151.04(D) on November 7, 2005.
 {¶ 6} On January 4, 2006, the disposition hearing regarding J.T. began and was continued until June 22, 2006. On June 22, 2006, both the adjudication hearing and disposition hearing regarding M.T. were held. The trial court's Judgment Entry filed on August 11, 2006 stated that the trial court found by clear and convincing evidence that M.T. is a dependent child pursuant to R.C. 2151.04(C) and (D). The court further found by clear and convincing evidence that because of the circumstances surrounding the neglect and/or dependency of M.T's other siblings and other conditions in the household of Victoria and Brandon that M.T. is in danger of being neglected by a parent. Based on its findings, the trial court ordered that M.T. continue in temporary custody of SCDJFS. Furthermore, the trial court also ordered that J.T. continue in temporary custody of SCDJFS.
 {¶ 7} During the hearings, it was established that Diane Thomas is the paternal grandmother of J.T. and M.T. A home study was conducted of Diane Thomas' home at the request of the SCDJFS to determine if Diane would be a suitable placement for J.T. and M.T. The parties stipulated to the admittance of the home study. The CASA Guardian Ad Litem testified that based upon her investigation of the home of Diane Thomas she is against the placement of J.T. with Diane. The CASA Guardian Ad Litem acknowledged that the home study stated that there were no observable safety concerns, that the family was able to provide for the child and that Diane was committed to the placement. However, further investigation disclosed that Diane was not active in raising her own children, which circumstance caused the CASA Guardian Ad Litem concern about the ability of Diane to care for her grandchildren. In addition, she didn't believe that Diane would keep Brandon and Victoria apart from the children.
 {¶ 8} The trial court found that Diane would not be a suitable relative placement for the children for the following reasons: (1) Even though she had passed a home inspection, her contact with the children had been minimal; (2) she smokes and/or allows people to smoke in her home, which would affect J.T.; (3) she was not supportive of Victoria and even asked Victoria to leave the home because she was not receiving PRC funding; and (4) Diane elected to not raise her own children.
 {¶ 9} On August 24, 2006, Victoria filed notices of appeal raising the following assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION IN NOT PLACING THE CHILDREN IN RELATIVE PLACEMENT.
 {¶ 10} Victoria alleges that the trial court abused its discretion in not placing J.T. and M.T. in relative placement. Specifically, she asserts that J.T. and M.T. should have been placed with their paternal grandmother, Diane Thomas.
 {¶ 11} Generally, the trial court's discretion with respect to child custody issues should be accorded the utmost respect, especially in view of the nature of the proceeding and the impact the court's determination will have on the lives of the participants. See Davis v. Flickinger
(1997), 77 Ohio St.3d 415, 674 N.E.2d 1159. Absent an abuse of discretion, a reviewing court should affirm a trial court's judgment. Thus, a reviewing court will not overturn a trial court's custody or placement judgment unless the trial court has acted in a manner that can be characterized as arbitrary, unreasonable, or capricious. SeeBlakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. The underlying rationale of giving deference to the trial court's finding is based upon the premise that the trial court judge is best able to view the witnesses and observe their demeanor, gestures, voice inflections, and to use those observations when weighing the testimony and evidence.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 12} Juvenile courts are vested with discretion to determine which placement option may be in the child's best interest when considering relative placement issues. See In re Keaton, Ross App. No. 04CA2785, 2788, 2004-Ohio-6210; In re P.P., Montgomery App. No. 19582, 2003-Ohio-1051; In re Branstetter (May 18, 2001), Montgomery App. No. 18539.
 {¶ 13} In this case, Diane did not testify nor did either parent present her as a witness in support of their disposition that she is a suitable placement for the children. The CASA Guardian Ad Litem, June Huss, testified that she did not recommend the children be placed with Diane. She stated that during her observation of Diane's home she saw an ashtray on a table in the home and the place smelled of cigarettes, which caused her some concern because J.T. had received orders from the hospital that there was to be "No smoking around the child" and that "Smokers should change clothes before being with the child." In addition, it was undisputed that J.T. had respiratory issues that appeared to be resurfacing at the time of the June 4, 2006 disposition hearing. June also testified that when Diane was asked if she would comply with any and all court orders including limiting her son's contact with the children, she responded that she would not keep her son out of her home because he was flesh and blood and she would not deny him coming into her residence.
 {¶ 14} Furthermore, upon additional research June spoke with one of Diane's former husbands, Brandon's father, who informed June that Diane never wanted any of her own three children. He further stated that Diane had given up her first daughter, Trudy, when she was very young to her former husband's mother and that she had very little contact with Trudy at all. He then stated that he raised Brandon and his brother until they were twelve or thirteen years old because Diane did not want to raise them. When June mentioned to him that Diane might be interested in taking custody of her grandchildren if Brandon and Victoria were unable to keep the children, he laughed over the phone and said "That's a real joke. She never wanted her own three so why would she be wanting a grandson?"
 {¶ 15} Erin Tea, a SCDJFS social worker, testified that her agency "did not recommend placement [of the children] with Diane Thomas." She stated that Diane did not have "any sort of relationship" with either child and that her contact with the children had been minimal. She also testified that her agency could not recommend placement with another relative, Trudy, Brandon's sister, because she had two open children service cases of her own involving allegations of sexual abuse.
 {¶ 16} The Home Study of Diane Thomas completed by Wood County Department of Job and Family Services on behalf of SCDJFS which was stipulated to by the parties does state that its position would be to recommend Diane's home as a suitable relative placement for the temporary custody of J.T. with several stipulations.
 {¶ 17} Upon review of the record, we find that the trial court had clear and convincing evidence before it to consider placement with Diane and to support its finding that a placement with Diane was not in the children's best interest and that she was not committed to the placement. Accordingly, based upon the foregoing reasons, Victoria's sole assignment of error is overruled. The August 11, 2006 judgments of the Common Pleas Court of Seneca County, Ohio are affirmed.
Judgments affirmed.
 ROGERS, P.J., and PRESTON, J., concur.