OPINION *Page 3 
{¶ 1} Mother-Appellant Victoria Balderson ("Victoria") and Father-Appellant Brandon Taylor ("Brandon") separately appeal from the October 18, 2007 Judgment Entry of the Court of Common Pleas, Juvenile Division of Seneca County, Ohio terminating their parental rights and granting permanent custody of J.T. (D.O.B. 3/31/05) and M.T. (D.O.B. 2/6/06) to the Seneca County Department of Job and Family Services ("SCJFS").
 {¶ 2} On April 1, 2005 the SCJFS filed a complaint alleging that J.T. was a dependent child as defined in Ohio Revised Code section 2151.04
and seeking temporary custody of J.T. In its complaint, the SCJFS alleged that there were reasonable grounds to believe that a parent had abused or neglected another child in the household and that J.T. was in danger of immediate or threatened physical or emotional harm. On April 1, 2005 the juvenile court issued an Ex Parte Order placing J.T. in the temporary custody of the SCJFS. On April 4, 2005 the juvenile court conducted a probable cause/shelter care hearing wherein the court continued J.T. in the temporary custody of the SCJFS.
 {¶ 3} On August 31, 2005 the juvenile court conducted an adjudicatory hearing on the merits of the SCJFS's complaint. At this hearing, Victoria and Brandon each admitted to the allegation of dependency. In its November 7, 2005 Judgment Entry the juvenile court adjudicated J.T. a dependent child pursuant to *Page 4 
R.C. 2151.04(D). The juvenile court set J.T.'s dispositional hearing for November 22, 2005, however this matter was continued to January 4, 2006. On January 4, 2006 the juvenile court began J.T.'s dispositional hearing, but the matter was not completed. The court subsequently continued the dispositional hearing, and this matter was ultimately concluded on June 22, 2006.
 {¶ 4} On February 6, 2006 M.T. was born to Victoria and Brandon. On this same date, the SCJFS filed a complaint alleging that M.T. was a dependent child pursuant to R.C. 2151.04 (for the same reasons established in J.T.'s complaint) and seeking temporary custody of M.T. On February 6, 2006 the juvenile court issued an Ex Parte Order placing M.T. in the temporary custody of the SCJFS. On February 7, 2006 the juvenile court conducted a probable cause/shelter care hearing wherein the court continued M.T. in the temporary custody of the SCJFS.
 {¶ 5} On June 22, 2006 the juvenile court conducted a hearing which encompassed J.T.'s dispositional hearing and M.T.'s adjudication and dispositional hearing. On August 11, 2006 the juvenile court issued a Judgment Entry wherein the court adjudicated M.T. a dependent child pursuant to R.C. 2151.04(C) and (D) and continued the SCJFS's temporary custody of J.T. and M.T. *Page 5 
 {¶ 6} On August 24, 2006 Victoria filed a timely appeal regarding the juvenile court's August 11, 2006 Judgment Entry alleging that the juvenile court abused its discretion in not placing J.T. and M.T. with relatives. Specifically, Victoria alleged that the children should have been placed with their maternal grandmother.
 {¶ 7} On January 29, 2007 this court issued an opinion wherein we determined that the trial court had clear and convincing evidence before it to support its finding that placement with their maternal grandmother was not in the children's best interest. Therefore, we overruled Victoria's assignment of error and affirmed the August 11, 2006 Judgment Entry of the trial court. See In re M.T., 3rd Dist. Nos. 13-06-30 and 13-06-31, 2007-Ohio-336.
 {¶ 8} On May 9, 2007 the SCJFS filed motions seeking the commitment of J.T. and M.T. to the permanent custody of the agency. The juvenile court conducted a hearing on the SCJFS's motions for permanent custody on August 15, 2007, August 17, 2007 and September 25, 2007.[1] In a Judgment Entry dated October 18, 2007 the juvenile court found, by clear and convincing evidence, that it was in the best interests of J.T. and M.T. to grant permanent custody to the SCJFS. Accordingly, the juvenile court terminated Victoria's and Brandon's *Page 6 
parental rights to each child and awarded permanent custody of J.T. and M.T. to the SCJFS.
 {¶ 9} Victoria and Brandon each appeal. Victoria asserts four assignments of error.
 VICTORIA'S ASSIGNMENT OF ERROR NO. 1 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO SENECA COUNTY JOB AND FAMILY SERVICES BECAUSE THE SCJFS FAILED TO DEVELOP AND IMPLEMENT A CASE PLAN REASONABLY CALCULATED TO ACHIEVE THE GOAL OF REUNIFICATION OF THE MINOR CHILDREN.
 VICTORIA'S ASSIGNMENT OF ERROR NO. 2 THE TRIAL COURT'S DECISION TO TERMINATE THE APPELLANT'S PARENTAL RIGHTS AND GRANT PERMANENT CUSTODY TO THE DEPARTMENT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 VICTORIA'S ASSIGNMENT OF ERROR NO. 3 THE TRIAL COURT ERRED IN ADMITTING SCJFS EXHIBIT NUMBER TWO.
 VICTORIA'S ASSIGNMENT OF ERROR NO. 4 THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY FOR THE CHILDREN BECAUSE IT WAS NOT IN THEIR BEST INTEREST.
Brandon asserts one assignment of error.
 BRANDON'S ASSIGNMENT OF ERROR THE COURT ERRED IN GRANTING PERMANENT CUSTODY OF THE MINOR CHILDREN TO THE DEPARTMENT OF JOB AND FAMILY SERVICES AS PERMANENT CUSTODY IS NOT IN THE BEST INTEREST OF THE MINOR CHILD. *Page 7 
 {¶ 10} Prior to addressing Victoria's and Brandon's assignments of error, we must first address the nature of this appeal. Our review of a grant of permanent custody begins by noting that "[i]t is well recognized that the right to raise a child is an `essential' and `basic' civil right. In re Franklin, 3rd Dist. Nos. 9-06-12, 9-06-13, 2006-Ohio-4841 citing In re Hayes (1997), 79 Ohio St.3d 46, 48,679 N.E.2d 680. The Supreme Court of Ohio has held that a parent "must be afforded every procedural and substantive protection the law allows."In re Hayes, supra, quoting In re Smith (1991), 77 Ohio App.3d 1, 16,601 N.E.2d 45.
 {¶ 11} Additionally, the trial court is vested with broad discretion in determining the allocation of parental rights and responsibilities for the care of minor children. Blacker v. Wilhelm, 6th Dist. No. WD-04-003, 2005-Ohio-317 citing Miller v. Miller (1983),37 Ohio St.3d 71, 74, 523 N.E.2d 846. As a trial court is in the best position to weigh witness credibility and evaluate a child's needs, the standard for reviewing a trial court's grant of permanent custody is abuse of discretion. In re Rinaldi, 3rd Dist. No. 1-02-74, 2003-Ohio-2562. Therefore, absent an abuse of that discretion, a trial court's decision regarding the allocation of parental rights and responsibilities must be upheld. Masters v. Masters (1994), 69 Ohio St.3d 83, 85, 630 N.E.2d 665. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v. Blakemore *Page 8 
(1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id. Therefore, it is within these constructs that we must examine Brandon and Victoria's assignments of error.
 {¶ 12} For ease of discussion, we elect to address Victoria's assignments of error out of order.
 Victoria's Assignment of Error No. 1 {¶ 13} In her first assignment of error, Victoria alleges that the trial court erred in granting permanent custody to the SCJFS because the agency failed to develop and implement a case plan reasonably calculated to achieve the goal of reunification of the minor children.
 {¶ 14} However, we note that the argument set forth in Victoria's first assignment of error does not relate to her compliance with the case plan. Instead, Victoria's argument concerns Brandon's goals under the case plan, his compliance with the case plan, and her desire to have the children placed with Brandon. Specifically, Victoria argues that she stated that she wanted the children placed with Brandon but that the SCJFS failed to establish individualized concerns and goals so as to allow the children to be reunified with Brandon.
 {¶ 15} We note that generally, an appealing party may not ordinarily complain of an error committed against a non-appealing party. In reMourey, 4th *Page 9 
Dist. No. 02CA48, 2003-Ohio-1870, ¶ 20. However, "[a]n appealing party may complain of an error committed against a non-appealing party when the error is prejudicial to the rights of the appellant." Id. quotingIn re Smith (1991), 77 Ohio App.3d 1, 131, 601 N.E.2d 45; In reHiatt (1993), 86 Ohio App.3d 716, 721, 621 N.E.2d 1222.
 {¶ 16} In the present case Victoria is not the sole appellant, as Brandon has also filed a separate notice of appeal and submitted a brief to this court. Our review of the record reveals that Brandon has not alleged that the trial court erred with regard to the filing of the case plan or the goals contained in the case plan. Accordingly, we find that Victoria does not have standing to allege errors in the case plan as they apply or relate to Brandon.
 {¶ 17} Additionally, we note that R.C. 2151.412 governs the filings of case plans and provides, in relevant part, as follows:
 (D) Any agency that is required by division (A) of this section to prepare a case plan shall attempt to obtain an agreement among all parties, including, but not limited to, the parents, guardian, or custodian of the child and the guardian ad litem of the child regarding the content of the case plan. If all parties agree to the content of the case plan and the court approves it, the court shall journalize it as part of its dispositional order. If the agency cannot obtain an agreement upon the contents of the case plan or the court does not approve it, the parties shall present evidence on the contents of the case plan at the dispositional hearing. The court, based upon the evidence presented at the dispositional hearing and the best interest of the child, shall determine the contents of the case plan and journalize it as part of the dispositional order for the child. *Page 10 
 (E)(1) All parties, including the parents, guardian, or custodian of the child, are bound by the terms of the journalized case plan. * * *.
 (2) Any party may propose a change to a substantive part of the case plan. . .[a] party proposing a change to the case plan shall file the proposed change with the court and give notice of the proposed change in writing . . . to all parties and the child's guardian ad litem. All parties and the guardian ad litem shall have seven days from the date the notice is sent to object to and request a hearing on the proposed change.
 (a) If it receives a timely request for a hearing, the court shall schedule a hearing pursuant to section 2151.417. . .to be held no later than thirty days after the request is received by the court. The court shall give notice of the date, time, and location of the hearing to all parties and the guardian ad litem. The agency may implement the proposed change after the hearing, if the court approves it. The agency shall not implement the proposed change unless it is approved by the court.
 (b) If it does not receive a timely request for a hearing, the court may approve the proposed change without a hearing. If the court approves the proposed change without a hearing, it shall journalize the case plan with the change not later than fourteen days after the change is filed with the court. If the court does not approve the proposed change to the case plan, it shall schedule a hearing to be held pursuant to section 2151.417. . .no later than thirty days after the expiration of the fourteen-day time period and give notice of the date, time, and location of the hearing to all parties and the guardian ad litem of the child. If, despite the requirements of division (E)(2) of this section, the court neither approves and journalizes the proposed change nor conducts a hearing, the agency may implement the proposed change not earlier than fifteen days after it is submitted to the court.
 (3) If an agency has reasonable cause to believe that a child is suffering from illness or injury and is not receiving proper care and that an appropriate change in the child's case plan is *Page 11 necessary to prevent immediate or threatened physical or emotional harm . . . it may implement the change without prior agreement or a court hearing and, before the end of the next day after the change is made, give all parties, the guardian ad litem of the child, and the court notice of the change. . .[a]ll parties and the guardian ad litem shall have ten days from the date the notice is sent to object to and request a hearing on the change. * * *
 {¶ 18} Specifically regarding J.T.'s case, the record reflects that the juvenile court approved the first case plan on June 14, 2005. The record reflects that numerous case plans and amendments to case plans were subsequently filed by the SCJFS and approved by the juvenile court. However, the record is silent as to any objections made by either Brandon or Victoria to any of the case plans filed in J.T.'s case. Specifically regarding M.T.'s case, the record reflects that the SCJFS filed its first case plan on March 31, 2006 and that this case plan was approved by the juvenile court on April 12, 2006. The juvenile court also approved subsequent case plan amendments. However, the record is silent as to any objections made by either Brandon or Victoria to any of the case plans filed in M.T.'s case.
 * * *
 {¶ 19} Additionally, as case plans are part of dispositional orders, Victoria could have assigned error to the adoption of the case plan(s) in her previous appeal of the adjudication and disposition of M.T. and J.T., but elected not to. See R.C. 2151.412(D); In re M.T.
3rd Dist. Nos. 13-06-30 and 13-06-31, 2007-Ohio-336. *Page 12 
 {¶ 20} Based on the foregoing, we find that Victoria's first assignment of error is without merit and is overruled.
 Victoria's Assignment of Error No. 3 {¶ 21} In her third assignment of error, Victoria alleges that the trial court erred in admitting SCJFS's Exhibit 2 during the permanent custody hearing.
 {¶ 22} During the August 17, 2007 permanent custody hearing the SCJFS presented the testimony of Mindy Strup ("Strup") a family development supervisor employed by the SCJFS. Strup testified that she was familiar with the SAWCIS (State Automated Child Welfare Information System), and that it is a system the SCJFS uses to store dictation and print reports from.
 {¶ 23} The SCJFS also presented the testimony of Erin Tea ("Tea"), a social worker employed by the SCJFS. Tea testified that as an employee of the SCJFS, she is required to maintain computer dictation records of telephone calls, voice mail, home visits, and things of that nature. Tea also testified that every worker at the agency is required to dictate what occurred during a home visit or phone call when it actually takes place or upon returning to the office. Specifically regarding J.T. and M.T., Tea was handed SCJFS's Exhibit 2 which she testified was "a printout of all the notes, dictation that has been kept on this case since the beginning of the case" through SACWIS, and that the printout covered the time period "from March 20, 2006 to August 16, 2007." *Page 13 
 {¶ 24} A review of the transcript reveals that when SCJFS attempted to admit Exhibit 2 into evidence, counsel for both Brandon and Victoria objected, claiming that the dictation contained hearsay statements. Numerous recesses were taken by the court to allow the court and attorneys to research this particular issue, and arguments were provided regarding the admissibility of Exhibit 2. However, the juvenile court declined to issue a ruling from the bench on the issue of Exhibit 2's admissibility. Instead, on September 6, 2007 the juvenile court issued a Judgment Entry wherein the court found that the evidence contained in the SCJFS's Exhibit 2 was relevant to the proceedings. Additionally, the court determined that Exhibit 2 "is properly admitted under the [hearsay] exceptions provided in Evid.R. 803(6) and 803(8)."
 {¶ 25} We note that an appellate court will not reverse a trial court's decision to admit or exclude evidence absent an abuse of discretion. State v. Osborn, 3rd Dist. No. 9-05-35,2006-Ohio-1890 citing State v. Bronlow, 3rd Dist. No. 1-02-95, 2003-Ohio-5757; Wightman v. Consol. Rail Corp. (1999),86 Ohio St.3d 431, 437, 735 N.E.2d 546. Additionally, Civ.R. 61 provides, in relevant part, as follows:
 No error in either the admission or exclusion of evidence * * * is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. *Page 14 
In re Matthews, 3rd Dist. Nos. 9-07-28, 9-07-29, 9-07-34,2008-Ohio-276 at ¶ 45. An abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. Id.
 {¶ 26} Specifically, Victoria alleges that the trial court erred in admitting the SCJFS's Exhibit 2 into evidence as the dictation/activity log report contains hearsay statements taken by the caseworkers. Additionally, Victoria alleges that the trial court gave no indication as to how much it depended or relied on the exhibit in rendering its decision on permanent custody.
 {¶ 27} However, we note that Victoria has not indicated how the admission of Exhibit 2 has materially prejudiced her. Since Victoria has failed to provide any rationale underlying her claim of prejudice, it is not necessary to this court decide whether SCJFS's Exhibit 2 was properly admitted into evidence. See In re Matthews, 2008-Ohio-276, at ¶ 46 citing In re Mick, 4th Dist. No. 05CA23,2005-Ohio-4591, at ¶ 16 (stating that an appellate court will not reverse the judgment of a trial court absent a clear showing of an abuse of discretion with attendant material prejudice to defendant). Furthermore, we are not persuaded that the juvenile court's action was inconsistent with justice or was an abuse of discretion *Page 15 
since the contents of Exhibit 2 was presented to the court in testimonial form as well. Id.; Civ.R. 61.
 {¶ 28} Accordingly, Victoria's third assignment of error is overruled.
Victoria's Assignments of Error Nos. 2 and 4 / Brandon's Assignment ofError
 {¶ 29} As Victoria's second and fourth assignments of error are substantially similar to Brandon's sole assignment of error, we elect to address these assignments of error together. Taken together, these assignments of error allege: (1) that the juvenile court erred and abused its discretion in terminating Victoria's and Brandon's parental rights and granting permanent custody of J.T. and M.T. to the SCJFS as permanent custody is not in the children's best interest; and (2) that the court's grant of permanent custody is against the manifest weight of the evidence.
 {¶ 30} Before a juvenile court may terminate parental rights and award permanent custody of a child to a properly moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on an *Page 16 
analysis under R.C. 2141.414(D). In re D.M., 2005-Ohio-6740 at ¶ 11
citing R.C. 2151.414(B)(1)(a) through (d) and (2); see also In reWilliam S. (1996), 75 Ohio St.3d 95, 99, 661 N.E.2d 739.
 {¶ 31} Clear and convincing evidence is that which will produce in the trier of fact `a firm belief or conviction as to the facts sought to be established.'" In re A.B. 9th Dist. No. 22437, 2005-Ohio-1273 at ¶ 9; see also In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St.469 at paragraph three of the syllabus. An appellate court will not reverse a trial court's decision on parental rights and custody unless it finds that the decision is unsupported by "sufficient evidence to meet the clear and convincing standard of proof." In re Dylan C. (1997),121 Ohio App.3d 115, 121, 699 N.E.2d 107.
 {¶ 32} In analyzing the first prong of the permanent custody test, we note that the trial court must first determine, by clear and convincing evidence, whether any of the subsections of R.C. 2151.414(B)(1) have been met. However, we note that in the present case, neither Victoria nor Brandon has specifically assigned error to the first prong of the permanent custody test.
 {¶ 33} The evidence demonstrated that J.T. had been in the temporary custody of the SCJFS for at least 12 months of a consecutive 22-month period *Page 17 
prior to the SCJFS filing its motion for permanent custody.[2] See R.C. 2151.414(B)(1)(d). Additionally, it is undisputed that M.T. has been in the temporary custody of the SCJFS for at least 12 months.[3]
 {¶ 34} Based on the foregoing, we find that the record supports the juvenile court's findings so as to satisfy the first prong of the permanent custody test.[4]
 {¶ 35} Turning our attention to the second prong of the permanent custody test, the "best interest of the child" standard, we note that "[t]he best interest prong of the permanent custody test requires the agency to prove by clear and convincing evidence that permanent custody is in the best interest of the child. As previously stated, clear and convincing evidence is that which will produce in the trier of fact *Page 18 
`a firm belief or conviction as to the facts sought to be established.'"In re A.B. 9th Dist. No. 22437, 2005-Ohio-1273 at ¶ 9; see also In reAdoption of Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v.Ledford (1954), 161 Ohio St.469 at paragraph three of the syllabus. An appellate court will not reverse a trial court's decision on parental rights and custody unless it finds that the decision is unsupported by "sufficient evidence to meet the clear and convincing standard of proof." In re Dylan C. (1997), 121 Ohio App.3d 115, 121, 699 N.E.2d 107.
 {¶ 36} R.C. 2151.414 provides, in relevant part, as follows:
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 * * * *Page 19 
 (E)(10) The parent has abandoned the child.
 (E)(11) The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 37} At the permanent custody hearing, the juvenile court heard testimony from various individuals specifically regarding the elements contained in R.C. 2151.414(D). We note that the analysis contained in the court's October 18, 2007 Judgment Entry is extremely thorough, and we note that the court set forth its findings as to each element of R.C.2151.414(D) in great detail.
 {¶ 38} Regarding subsection (D)(1) and the interaction of the children with their parents, siblings, and foster caregivers, the juvenile court found as follows:
 Mother has stated that she should voluntarily surrender her parental rights as to each child. Mother and Father have not been compliant with case plans. Mother and Father have not been regular in their respective visits with each child. Mother and Father have been inconsistent in their visits with J.T. and M.T.
 {¶ 39} Additionally, our review of the record reveals that the juvenile court correctly set forth the detailed history of Victoria and Brandon's visitation with the children wherein the court found, in relevant part, as follows:
 . . .during the time period from February 14, 2006 until May 3, 2007, 66 visits were scheduled for Mother. Mother attended 15 visits during that time. Mother's only visit with the children in 2007 at Patchworks House was on April 26, 2007. Visits were resumed at the agency on July 11, 2007. Mother did not visit at any visits scheduled in August, 2007. Mother visited on all 4 *Page 20 dates scheduled in September, 2007. These were the first visits with the children since April 26, 2007.
 * * *
 From the time period of August 24, 2005 until May 3, 2007, 88 visits with Father were scheduled. Father attended 39 of those visits. After the conclusion of visits at Patchworks House, visits were resumed at the agency on July 11, 2007. After the resumption of visits, Father has visited 6 out of 10 times.
 Father has visited with the children a total of 7 times in 2007 — with six of the 7 visits coming between July 11, 2007 and September 25, 2007. Father did not visit the children between January 9, 2007 and July 11, 2007. * * *
 * * *
 Since the initiation of these actions, each child has been in one foster care setting. After their respective placements, J.T. and M.T have been kept together continuously in the same foster care home. In this placement, J.T. and M.T. have become positively bonded with the Ziegler foster parents and their sibling Kendra. The Ziegler foster parents assert that they are bonded with J.T. and M.T. and want to adopt them.
 {¶ 40} Regarding subsection (D)(2) and the wishes of the children, the juvenile court noted that as J.T. is two years old and M.T. is one year old, "neither child was able to testify directly to the court due to their respective ages." Additionally, we note that the children's guardian ad litem recommended that Victoria and Brandon's parental right be terminated as to each child and that J.T. and M.T. be placed in the permanent custody of the SCJFS. (See also Guardian Ad Litem Report, filed August 15, 2007).
 {¶ 41} Our review of the record also reveals that the juvenile court correctly set forth the custodial history of the children so as to satisfy subsection (D)(3). *Page 21 
Specifically, the court found that J.T. was removed from his parents' care on April 1, 2005, the day after he was born, and placed in foster care. M.T. was removed from her parents' care on February 6, 2006, the day she was born, and placed in foster care. The court found that both children have continuously remained in foster care since the date they were initially removed. Additionally, the court found that J.T. and M.T. "have been in one foster home — the Ziegler foster home since their respective removals."
 {¶ 42} Regarding subsection (D)(4) and the children's need for a legally secure placement, our review of the record reveals that the juvenile court correctly determined that "[m]other has expressed that she wants to voluntarily surrender her parental rights to M.T. and J.T." The court also found, in relevant part, that Victoria and Brandon have failed to regularly visit with their children, have each failed to maintain stable housing during these actions, have each failed to comply with the case plans that would enable reunification with their children, and that they have not been consistent in following the orders of the court (with regard to the case plan). Accordingly, the juvenile court found that "by clear and convincing evidence, J.T. and M.T. are each in need of a legally secure permanent placement. That type of placement cannot be achieved without a grant of each child into the permanent custody to the SCJFS." *Page 22 
 {¶ 43} The juvenile court also addressed the factors contained in R.C.2151.414(E)(10) and (11).
 {¶ 44} Pursuant to R.C. 2151.414(E)(10) the court shall determine whether the parent has abandoned the child. R.C. 2151.011(C) states "[f]or purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." See also In re Cornell, 11th Dist. No. 2003-P-0054, 2003-Ohio-5007.
 {¶ 45} In the present case, the evidence demonstrated that Victoria visited with the children a total of five times in 2007, and that four out of these five visits occurred in September, 2007. As Victoria did not visit the children between April 26, 2007 and the first week of September, 2007, she did not maintain contact or visit with J.T. or M.T. for more than a 90 day period. Because Victoria failed to visit or maintain contact with J.T. or M.T. for more than 90 days, a presumption of abandonment arose which Victoria failed to rebut.
 {¶ 46} Additionally, the evidence demonstrated that Brandon visited with the children a total of seven times in 2007, and that six of these seven visits occurring between July 11, 2007 and September 25, 2007. As Brandon did not visit the children between January 9, 2007 and July 11, 2007, he did not maintain *Page 23 
contact or visit with J.T. or M.T. for more than a 90 day period. Although Brandon alleged that he was prevented from visiting J.T. and M.T. during his term of incarceration and subsequent house arrest, no testimony was presented by Brandon's probation officer that Brandon was not permitted to visit with his children during his term of house arrest. In applying the presumption set forth in R.C. 2151.011(C) to the evidence presented, the juvenile court determined, by clear and convincing evidence, that J.T. and M.T. had been abandoned by both Victoria and Brandon.
 {¶ 47} Finally, we note that the juvenile court addressed R.C.2151.414(E)(11) and correctly found, by clear and convincing evidence, that Victoria had her parental rights to K.A. (D.O.B. 1/15/03) involuntarily terminated, and that K.A. is the biological child of Victoria. (See SCJFS's Exhibit 1; see also In re M.T. 3rd
Dist. Nos. 13-06-30 and 13-06-31, 2007-Ohio-336 at ¶ 4 and 5).
 {¶ 48} Based on the foregoing, we find that the record supports the juvenile court's finding that the grant of permanent custody of J.T. and M.T. to the SCJFS would be in the best interests of the children based upon an analysis of the factors contained in R.C. 2151.414(D) so as to satisfy the second prong of the permanent custody test.
 {¶ 49} Thus, we find that the juvenile court carefully considered all of the evidence presented and engaged in a thorough analysis of both prongs of the *Page 24 
permanent custody test as set forth in R.C. 2151.414. Accordingly, we find that the juvenile court's termination of Victoria's and Brandon's parental rights and grant of permanent custody of J.T. and M.T. to the SCJFS was supported by clear and convincing evidence, and therefore was not against the manifest weight of the evidence. Victoria's second and fourth assignments of error are overruled and Brandon's sole assignment of error is overruled.
 {¶ 50} Therefore, the October 18, 2007 Judgment Entry of the Court of Common Pleas of Seneca County, Juvenile Division, terminating Victoria's and Brandon's parental rights and granting permanent custody of J.T. and M.T. to the Seneca County Department of Job and Family Services is affirmed.
Judgments Affirmed.
 PRESTON and ROGERS, J.J., concur.
[1] The record reflects that Victoria was not present at the August 15, 2007 hearing. However, she was present at the hearings on August 17, 2007 and September 25, 2007. Additionally, we note that the hearings also addressed a "motion for order of disposition placing the children in the legal custody of Brandon Taylor" filed by Brandon on August 15, 2007.
[2] For the purposes of division (B)(1) of R.C. 2151.414, a child shall be considered to have entered the temporary custody of an agencyon the earlier of the date that the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty (60) daysafter the removal of the child from the home. (Emphasis added). In the instant case, J.T. was born on March 31, 2005 and removed from his home and placed in the temporary custody of the SCJFS on April 1, 2005. At a hearing held on August 31, 2005 J.T. was adjudicated dependent and a Judgment Entry journalizing this finding was filed on November 7, 2005. J.T. was continued in the temporary custody of the SCJFS. J.T. remained in the temporary custody of the SCJFS without interruption, and in the same foster home as of the date the SCJFS filed its motion for permanent custody on May 9, 2007. Accordingly, J.T. was in the temporary custody of the SCJFS for at least 12 months of a consecutive 22-month period pursuant to R.C. 2151.414(B)(1)(d).
[3] M.T. was born on February 6, 2006. On this same date, the juvenile court issued an Ex Parte Order placing her in the temporary custody of the SCJFS. On August 11, 2006 the juvenile court adjudicated M.T. dependent and continued her in the temporary custody of the SCJFS. M.T. remained in the temporary custody of the SCJFS, without interruption, and in the same foster home as of the date the SCJFS filed its motion for permanent custody on May 9, 2007. Accordingly, M.T. was in the temporary custody of the SCJFS for at least 12 months pursuant to R.C.2151.414(B)(1).
[4] We note that the juvenile court also made additional findings pursuant to R.C. 2151.414(E) on the issue of whether the children cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. However, because the juvenile court determined, by clear and convincing evidence, that R.C.2151.414(B)(1)(d) applied to the facts of the present case, the court was not required to make further determinations or consider other factors as to the first prong of the permanent custody test. See In reScott, 3rd Dist. No. 13-07-18, 2007-Ohio-6426 at ¶35. *Page 1