DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of Rosetta P. and appellant, Carlos R., the natural parents of Carlos R. III, and granted permanent custody of Carlos R. III to appellee, Lucas County Children Services ("LCCS").
 {¶ 2} Carlos III was born in May 2005. At the time of his birth, Carlos III and Rosetta P. tested positive for marijuana. Rosetta had also tested positive for cocaine and marijuana in March 2005, before Carlos III was born. Following Carlos III's birth, *Page 2 
Rosetta was referred to SASI for substance abuse treatment, but she did not follow through. On August 15, 2005, Rosetta was transported to a hospital due to an overdose of Prozac. Earlier that day she had also been using crack cocaine and marijuana. On August 25, 2005, the lower court issued an ex parte order granting appellee emergency shelter care custody of Carlos III. The following day, appellee filed a complaint in dependency and neglect which alleged the above facts and further alleged that there was ongoing domestic violence between Rosetta and appellant, that Rosetta has another child who is in the legal custody of a relative in Florida, and that appellant has another child with whom he has limited contact and for whom he provides no support.
 {¶ 3} At an adjudicatory hearing on September 26, 2005, appellant and Rosetta consented to an adjudicatory finding that Carlos III was dependent and neglected. The court then approved the case plan that had been filed on September 22, 2005, and awarded temporary custody of Carlos III to appellee. The goal of the case plan was reunification. Under the initial case plan, appellant was to complete a diagnostic assessment to rule out any mental health and/or anger management concerns and was to show an active interest in his child, as he had never been involved in providing care for Carlos III.[1]
 {¶ 4} On April 20, 2006, the case came before the lower court for a reasonable efforts hearing. The court reviewed the parents' progress on the case plan and heard from *Page 3 
Erin Morgan, the caseworker, that both parents had been regularly visiting Carlos III. The court then determined that reasonable efforts were being made to finalize the permanency plan and continued the custody arrangement.
 {¶ 5} On June 26, 2006, an amended case plan was filed in the court below that added parenting classes to the services that appellant needed. Because appellant had never before parented a child it was determined that he needed parenting classes if he was to be awarded custody of Carlos III. Appellee subsequently filed a motion for an extension of the temporary custody order. On August 17, 2006, the lower court held a hearing on that motion at which Erin Morgan again testified. Morgan stated that appellant had completed his diagnostic assessment, had not been recommended for any services, and that he had been regularly attending visits with Carlos III. Morgan further stated that appellant did not have stable, independent, appropriate housing and that he would have to establish such housing in order to be awarded custody of Carlos III. However, Morgan also noted that appellant had not, as of that time, indicated that he wanted custody of Carlos III. In light of these considerations, Sharon Fitzgerald, the guardian ad litem, recommended an extension of the temporary custody order so that it could be determined if Carlos III could be permanently placed with appellant. The court then granted the motion for an extension of the temporary custody order.
 {¶ 6} Thereafter, in September 2006, appellant began parenting classes. Nevertheless, on January 8, 2007, appellee filed a motion for permanent custody of Carlos III. With regard to appellant, the motion alleged that despite his attendance at *Page 4 
parenting classes, appellant has missed two sessions and was facing unsuccessful discharge if he missed another session. The complaint further asserted that appellant had not obtained independent housing and lives with family members who are not appropriate due to a history with LCCS. Finally the motion alleged that appellant was unemployed, had no source of income and was recently arrested for selling drugs. Because Carlos III had then been in the custody of appellee for 16 months and was in need of a permanent home, appellee believed that an award of permanent custody was in his best interest and noted that his foster parent was interested in adopting him.
 {¶ 7} On April 23, 2007, the case proceeded to trial on the motion for permanent custody. The following evidence was submitted with regard to appellant.
 {¶ 8} On March 23, 2007, appellant was arrested after a routine traffic stop. Appellant is also known as Carlos S. A check of his record revealed that he had an outstanding warrant for possession of drug paraphernalia and a search incident to arrest uncovered a medicine bottle in his jeans pocket that contained four rocks of crack cocaine. During his arrest, appellant stated that he found the crack cocaine in his backyard and did not want children to find it. At the time of the trial below, the charges were still pending against appellant. In addition, a charge of felony nonsupport was pending in the Lucas County Court of Common Pleas regarding another of appellant's children.
 {¶ 9} Evidence was also submitted regarding appellant's participation in parenting classes. Appellant participated in a parenting class as required by the case plan *Page 5 
for 16 to 18 weeks. In the class, appellant worked on age appropriate disciplines, bonding, attachment, parenting skills and child development. Nora Bender, the parent educator who worked with appellant, testified that while appellant was bonded and attached to Carlos III, he did not exhibit long-term parenting skills by himself and did not have an appropriate support system in the form of his mother, who is the only person appellant identified as a member of his support system. Appellant himself even admitted to Bender that it would not be healthy for Carlos III to live in a home with appellant's mother. Bender therefore believed that the risks to Carlos III for neglect would be high if he were to live with appellant. Bender further stated that while appellant did complete the parenting class, she could not say that he successfully completed the class. In particular, Bender stated that appellant lacked the emotional maturity to parent alone on a long-term basis. Moreover, she had recommended to appellant that he join the fatherhood group but he was not receptive to that suggestion. Bender stated that the fatherhood group is an intense parenting class that also helps individuals obtain Section Eight housing and employment. Housing and employment had been constant issues for appellant, yet he had been unable to find or maintain a job or find appropriate housing.
 {¶ 10} Erin Morgan, the caseworker, also testified at the trial below. Morgan testified that since the case was opened, appellant has lived with his mother, his grandmother, and another adult male in his mother's house and that the home would not be an appropriate placement for Carlos III. In particular, the home was the subject of a drug raid in the fall of 2006, during which drugs were found. Because of that, every *Page 6 
time she sees appellant, Morgan has spoken with him about his need to obtain housing. Although appellant acknowledges that need, he has not been gainfully employed since the case was opened and cannot afford independent housing. As to appellant's criminal record, Morgan testified that at the time of the trial below, appellant had been charged with felony non support for a daughter with whom he has little or no contact. During the proceedings below, however, appellant did consistently visit Carlos III, missing only 21 of 221 scheduled visits.
 {¶ 11} Regarding Carlos III, Morgan testified that he has been in the same foster home since he was three months old, that he is very well adjusted and bonded to that home and the people in it, that he is developmentally on target, and that his foster parent has expressed an interest in adopting him. Morgan also stated that Carlos III's foster parent is aware that he was born with cocaine in his system and knows to monitor his development as he gets older.
 {¶ 12} At the trial below, the lower court also reviewed the written report and recommendation of the guardian ad litem, who further testified at the trial. The guardian ad litem stated that despite 16 months of involvement with case plan services, appellant had been unable to establish independent housing or to find a job. She was also concerned with his involvement in the criminal justice system. Finally, the guardian ad litem noted that Carlos III was then two years old, having spent over 80 percent of his life in foster care, and that he cannot wait for his parents to keep trying to find jobs and housing and to complete their case plan services. Because he is in need of a permanent *Page 7 
home and because neither of his parents are able to provide that for him, the guardian ad litem recommended that permanent custody of Carlos III be awarded to appellee.
 {¶ 13} On May 10, 2007, the lower court issued a judgment entry terminating the parental rights of appellant and Rosetta P. Pursuant to R.C. 2151.353(A)(4) and 2151.414(E)(1), (4), (14) and (16), the court found that Carlos III cannot be placed with either parent within a reasonable time and should not be placed with either parent and that, pursuant to R.C. 2151.414(D), an award of permanent custody would be in Carlos III's best interest. Specifically, the court found under R.C.2151.414(E)(1), that appellant failed continuously and repeatedly to substantially remedy the conditions causing Carlos III to be placed outside the home. The court further found, pursuant to R.C.2151.414(E)(4), that appellant demonstrated a lack of commitment toward Carlos III by actions showing an unwillingness to provide an adequate permanent home for the child and by failing to show any initiative in obtaining gainful employment or a suitable home for his child, despite being offered assistance from more than one agency to achieve these goals. The court next found, pursuant to R.C. 2151.414(E)(14), that appellant was unwilling to provide food, clothing, shelter, and other basic necessities for Carlos III. Finally, pursuant to R.C.2151.414(E)(16), the court found as other relevant factors the fact that there were then pending charges against him for possession of drugs and trafficking in drugs and the fact that he had another child with whom he has little contact and for whom he provides no support. *Page 8 
 {¶ 14} On the issue of best interest, the court considered all of the relevant factors under R.C. 2151.414(D)(1) to (5) and found that an adoptive placement would positively benefit Carlos III, that a grant of permanent custody would facilitate an adoption and that Carlos III's need for a legally secure placement could not be achieved without a grant of permanent custody. The court noted that Carlos III was very bonded to his foster family and that his foster parent wanted to adopt him. The court then determined that an award of permanent custody was in the best interest of Carlos III.
 {¶ 15} In addition to the above, the court further found, pursuant to R.C. 2151.414(B)(1)(d), that Carlos III had been in the temporary custody of one or more public children service agencies for 12 or more months of a consecutive 22 month period and that and an award of permanent custody under that section of the statute was in his best interest.
 {¶ 16} Accordingly, the lower court awarded LCCS permanent custody of Carlos III and terminated the parental rights of appellant and Rosetta P. Appellant now challenges that judgment through the following assignments of error:
 {¶ 17} "Assignment of Error No. 1: The trial court erred in rendering findings under subsections 2151.414(E)(4) and (14) because the findings were predicated on Father's support system, poverty and inability to obtain housing.
 {¶ 18} "Assignment of Error No. 2: Numerous findings of fact were not supported by the manifest weight of the evidence. *Page 9 
 {¶ 19} "Assignment of Error No. 3: The finding under 2151.414(E)(16) that Father continues to engage in criminal behavior was in error where Father had not been convicted of felony non support or drug trafficking."
 {¶ 20} Because appellant's assignments of error are related, they will be discussed together. Appellant essentially challenges the factual findings made by the trial court.
 {¶ 21} The disposition of a child determined to be dependent, neglected or abused is controlled by R.C. 2151.353 and the court may enter any order of disposition provided for in R.C. 2151.353(A). Before the court can grant permanent custody of a child to a public services agency, however, the court must determine: (1) pursuant to R.C.2151.414(E) that the child cannot be placed with one of his parents within a reasonable time or should not be placed with a parent; and (2) pursuant to R.C. 2151.414(D), that the permanent commitment is in the best interest of the child. R.C. 2151.353(A)(4). R.C. 2151.414(E) provides that, in determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of the sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time or should not be placed with the parent. Those factors include:
 {¶ 22} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the *Page 10 
home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 23} "* * *
 {¶ 24} "(4) The parent had demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 25} "* * *
 {¶ 26} "(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
 {¶ 27} "* * *
 {¶ 28} "(16) Any other factor the court considers relevant." R.C.2151.414(E).
 {¶ 29} Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proven. Cross v. Ledford (1954), 161 Ohio St. 469. In determining the best interest of the child, R.C. *Page 11 2151.414(D) directs that the court shall consider all relevant factors, including, but not limited to:
 {¶ 30} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 31} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 32} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 33} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 34} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 35} Upon a thorough review of the record in this case, we conclude that the trial court's findings that Carlos III could not be placed with appellant within a reasonable time and should not be placed with appellant and that permanent custody was in Carlos III's best interest were supported by clear and convincing evidence. *Page 12 
 {¶ 36} Appellant first argues that the trial court's findings under R.C. 2151.414(E)(4) and (14) were improper in that he was essentially penalized for being poor and unable to find housing or a job. We disagree. This is not the same situation as that presented in In re SeanB., 170 Ohio App.3d 557, 2007-Ohio-1189. In that case, the appellant's inability to obtain independent housing was the result of the negligence of the agency assisting her. In the present case, it was recommended to appellant that he participate in a fathering group that would specifically aid him in his search for a job and would help him obtain Section 8 housing. Appellant acknowledged that his current living situation was inappropriate for Carlos III, but refused to participate in the one program that would help him with housing. That is, the court made its findings under R.C. 2151.414(E)(4) and (14) because appellant made little or no effort to obtain a job or housing. The efforts he made to obtain housing (looking at market rate apartments) made no sense given his financial situation and he claimed he could not look for a job because he had to fix his mother's boyfriend's car. In In re WilliamS (1996), 75 Ohio St.3d 95, the Supreme Court of Ohio discussed the difference between a parent's unwillingness to provide an adequate permanent home and an inability to do so. Only an unwillingness suffices as an adequate reason for making a finding under R.C. 2151.414(E)(4) and/or (14). Id. at 100. Upon a review of the record, we find that there was clear and convincing evidence to support the trial court's findings under R.C. 2151.414(E)(4) and (14) that appellant was unwilling to provide an adequate permanent home for Carlos III. *Page 13 
 {¶ 37} Appellant next challenges the court's finding made pursuant to R.C. 2151.414(E)(1) that appellant failed continuously and repeatedly to substantially remedy the conditions causing Carlos III to be placed outside of his home. The record reveals that when Carlos III was removed from the home, appellant and Rosetta lived together, Rosetta had a substantial substance abuse problem and there was ongoing domestic violence between appellant and Rosetta. Appellant and Rosetta consented to a finding of dependency and neglect based on those facts. The initial case plan required appellant to undergo a diagnostic assessment to rule out any mental health or anger management concerns. Another concern was appellant's lack of involvement in Carlos III's care. The case plan therefore required him to show an active interest in his child. Appellant did complete a diagnostic assessment. No services were recommended for him based on the results of that assessment. Indeed, there was no evidence presented at the trial below that appellant had any mental health or anger management issues, and appellant and Rosetta had long since stopped living together. Appellant regularly attended visits with his son. Although it was subsequently recommended that he complete a parenting class, appellant's parenting was not an issue that caused Carlos III to be removed from the home. While there was ample evidence to support a finding that Rosetta continued to have substance abuse problems, nothing in the record supports a finding that appellant failed to remedy the conditions that caused Carlos III to be removed from the family home. *Page 14 
 {¶ 38} Accordingly, the court erred in making an R.C. 2151.414(E)(1) finding with regard to appellant. Nevertheless, because a court need only find one factor under R.C. 2151.414(E) to support a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, and because there was clear and convincing evidence to support the court's findings under R.C.2151.414(E)(4) and (14), the court's finding in this regard was harmless. Similarly, any error in the court's findings under R.C.2151.414(E)(16) was harmless.
 {¶ 39} Finally, appellant contends that the lower court's findings under R.C. 2151.414(D)(1) to (5), regarding the best interest of Carlos III, were against the manifest weight of the evidence. As set forth above, in determining the best interest of a child, a court is to consider the factors set forth in R.C. 2151.414(D)(1) to (5). In its judgment entry, the lower court stated that it had considered all of therelevant factors in R.C. 2151.414(D)(1) to (5). In this regard, it is clear from the court's judgment that the court considered Carlos III's interaction with his foster family, Carlos III's need for a legally secure permanent placement, which the court determined could not be achieved without a grant of permanent custody, and the custodial history of Carlos III, including the fact that he had been in the temporary custody of appellee for nearly 19 months out of a consecutive 22 month period. Finally, the court recognized that both the caseworker of record and the guardian ad litem recommended that an award of permanent custody would be in Carlos III's best interest. Upon a review of the record, we find that the court's best interest findings were supported by clear and convincing evidence. *Page 15 
 {¶ 40} As there was clear and convincing evidence to support the trial court's findings that Carlos III could not be placed with either parent within a reasonable time and should not be placed with either parent and that an award of permanent custody was in Carlos III's best interest, the trial court did not err in terminating appellant's parental rights. The three assignments of error are not well-taken.
 {¶ 41} On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Mark L. Pietrykowski, P.J., Arlene Singer, J., Thomas J. Osowik, J., Concur.
[1] Rosetta did not appear at the trial on appellee's motion for permanent custody, although she was represented by counsel, and has not appealed the award of permanent custody. Accordingly, we will not address the issues surrounding the court's termination of Rosetta's parental rights. *Page 1