DECISION AND JUDGMENT
{¶ 1} This is an appeal from a judgment by the Lucas County Court of Common Pleas, Juvenile Division, terminating a mother and father's parental rights and granting permanent custody to appellee, Lucas County Children Services Board ("agency"). For the reasons that follow, we affirm the judgment of the trial court. *Page 2 
 {¶ 2} Appellant, James R., and his ex-wife, Victoria R., are the biological parents of minor children Macey R., who was born in 2000, and Corey R., who was born in 2002. The agency first became involved with this family in June 2005, in response to referrals alleging that there was ongoing domestic violence between Victoria R. and her live-in boyfriend, Jesse G. At that time, the children were residing with their mother. Also at that time, a contentious divorce was taking place between the children's mother and father.
 {¶ 3} The agency was made a party during the domestic relations court proceedings, at which time it fashioned a case plan. Under that plan, both Victoria R. and Jesse G. were to undergo alcohol and drug assessment; Victoria R. was to have a diagnostic assessment and treatment for anger management; and Jesse G. was to have domestic violence offender treatment.
 {¶ 4} On September 13, 2005, the agency requested and received an ex parte order to take the minor children into shelter care custody, and on September 14, 2005, the agency filed its complaint in dependency and neglect. In the complaint, the agency alleged that it had received, in addition to referrals alleging domestic violence between Victoria R. and Jesse G., allegations that Victoria R. and Jesse G. had been involved in substance abuse and an allegation that Macey R. had been sexually abused by Jesse G. The complaint further stated that, as of the date of the complaint, neither Victoria R. nor Jesse G. had participated in any of the case plan services. Also mentioned in the *Page 3 
complaint was an allegation of domestic violence between James R. and his then-girlfriend, Dronecia (a.k.a. Tammy).
 {¶ 5} Following an emergency shelter care hearing, the trial court found probable cause to believe that the minor children required continuance in shelter care in order to protect them from immediate or threatened physical or emotional harm in their mother's home. Finding that placement with their father would be least disruptive to the children, the court awarded their temporary custody to appellant, James R.
 {¶ 6} Following an adjudicatory/dispositional hearing held on November 9, 2005, Macey R. and Corey R. were adjudged dependent and temporary custody was, once again, awarded to appellant.
 {¶ 7} On April 3, 2006, the agency filed a motion to change disposition and for shelter care hearing. As grounds for this motion, the agency stated, among other things, that it had received allegations of additional, ongoing, domestic violence between James R. and his then-wife, Dronecia. At the shelter care hearing, held the same day, the trial court found probable cause for the children to be removed from their father and placed in the temporary custody of the agency.
 {¶ 8} At a review hearing, held on May 10, 2006, the court noted on the record the addition to the case plan of diagnostic assessment and domestic violence counseling services to address the concerns about domestic violence involving James R. and Dronecia. *Page 4 
 {¶ 9} On June 6, 2006, James R., who was serving in the army, was deployed to Iraq to begin what would ultimately become a ten-month tour of duty. Shortly after, on June 14, 2006, Dronecia R. filed a motion for legal custody and to intervene. Following a hearing in that matter, the court found that an award of temporary custody to the agency was in the best interest of the children. Dronecia R.'s motion to intervene was denied on the basis of timeliness, and her motion for custody was dismissed.
 {¶ 10} On March 20, 2007, the agency filed a motion for permanent custody alleging that Victoria R. and James R. had failed to comply with case plan services. James R. returned from Iraq in April 2007.
 {¶ 11} At a pretrial held on June 27, 2007, the trial court set the permanent custody hearing for July 16 and 17, 2007. Soon after, the agency filed a request for a six-month continuance in order to give James R. additional time to resolve his issues. The trial court granted the motion and reset the permanent custody hearing for January 28 and 29, 2008.
 {¶ 12} The permanent custody hearing took place as scheduled. At the hearing, the following facts were stipulated to by the parties:
 {¶ 13} "1. [The agency] filed a Complaint in Dependency and Neglect on September 14, 2005. The above captioned children were adjudged dependent on November 9, 2005 and temporary custody was awarded to their father [James R.]. The court later modified this disposition because [James R.] was not taking appropriate care *Page 5 
of the children and awarded temporary custody of the children to [the agency] on July 14, 2006. The Court also approved a case plan with the goal of reunification.
 {¶ 14} "2. [Victoria R.] was required to stabilize her mental health issues, demonstrate that she could remain alcohol and drug free, obtain and maintain housing, educate herself about domestic violence and remain free from such relationships, demonstrate the ability to provide a safe and stable environment for her children by participating and successfully completing parenting classes, and maintain contact with the children through consistent visitation. [James R.] was required to stabilize his mental health issues, and to address issues of domestic violence and demonstrate he was able to live a life free of engaging in domestic violence.
 {¶ 15} "* * *
 {¶ 16} "4. [sic] [Victoria R.], the mother, has been diagnosed with panic disorder and anxiety. She is prescribed to take 20 mg of Lexapro, but has under-medicated herself on a couple of occasions. Her counselor states that it is not advisable for her to live in a shelter or her own housing because of her mental disorder when she is not properly medicated.
 {¶ 17} "5. [Victoria R.] has reported to the caseworker that she has relapsed during the pendency of this matter and has not maintained a sober lifestyle. The mother also indicates that she last became intoxicated in November 2006.
 {¶ 18} "6. [Victoria R.] has not obtained and maintained stable housing. *Page 6 
 {¶ 19} "7. The mother has maintained a relationship with a partner who is domestically violent and has failed to obtain treatment for his substance abuse issues. The mother maintained that she was not in a relationship with the person, but later acknowledged that she had been all along.
 {¶ 20} "* * *
 {¶ 21} "9. The mother was requested to reengage in services at Project Genesis [for domestic violence counseling] but she did not do so. She has also lost her employment and does not have a visible means of supporting herself or others.
 {¶ 22} "10. The visits were emotionally difficult for the mother. Her attendance is also sporadic at times.
 {¶ 23} "11. [James R.] was deployed to Iraq in June of 2006. He has not completed his services for mental health or domestic violence."
 {¶ 24} In addition to the above-mentioned stipulated facts, evidence of the following was adduced.
 {¶ 25} The relationship between Victoria R. and James R. was marked by a history of domestic violence. In 2003, while James R. was in the Marines, and the family was living with him in North Carolina, he received counseling for domestic violence through his employer. After completing an eight-week course, he was referred to a 16-week course, because it was determined that he had not processed the instruction from the previous course. After he completed the 16-week course, his counselor felt that he had *Page 7 
still not processed the information. As a result, the Marines arranged to have Victoria R. and the children sent to Ohio out of fear for their safety.
 {¶ 26} After her marriage to James R. ended, Victoria R. continued to be engaged in domestic violence, through her relationship with Jesse G., despite having completed domestic violence counseling at Project Genesis.
 {¶ 27} At the time of trial, Victoria R. was unemployed and living in a shelter. Although she was continuing to address her mental health issues, there were three occasions after the children were removed from her care when she was admitted to a psychiatric hospital — once in October 2006, once in October 2007, and once in December 2007.
 {¶ 28} In August 2007, Victoria R. discontinued attending counseling with her mental health therapist. In addition, she failed to maintain contact with the caseworker (her last meeting with him having taken place in October 2007), and she failed to successfully complete her parenting classes.
 {¶ 29} Victoria R. did not consistently visit her children when she was able to do so. Her last visit with the children was in August 2007. Since that time, she simply failed to attend scheduled visits, never even calling to say why she was not coming.
 {¶ 30} With respect to James R., we begin with the testimony of Julie Hoffman, the guardian ad litem for the children. According to Hoffman, the children fear and mistrust their father. Macey R., in particular, feels that her father will hurt her if she goes home, that he lies and will not have changed, and that he will still do bad things. She also *Page 8 
feels that if she talks about things that are going on in her house, he will beat her. She described in detail, to Hoffman, one incident during which she witnessed her father punch Dronecia in the nose.
 {¶ 31} Other evidence showed that on August 9, 2005, there was a confrontation between James R. and Dronecia during which he allegedly struck her with ice (or an ice cube tray) and caused the bridge of her nose to bleed. He was convicted of disorderly conduct for this incident.
 {¶ 32} Again, on March 31, 2006, James R. engaged in an altercation with both Victoria R. and Dronecia. The altercation began as a verbal argument, and then escalated to a physical attack. Once more, James R. was convicted of disorderly conduct.
 {¶ 33} Sue Lane Baldwin is the Director of the Center for Child and Family Advocacy. On April 3, 2007, she conducted a diagnostic assessment with James R. During that diagnostic assessment, James R. admitted to having gotten into approximately 50 fights as a juvenile, approximately ten bar fights, numerous physical confrontations with his first wife, and more than one physical confrontation with his current wife.
 {¶ 34} After speaking with agency caseworker Rick Mendieta, Baldwin determined that James R. needed domestic violence offender treatment and marriage counseling. Baldwin provided the marriage counseling, conducting sessions with James R. and Dronecia (with their two-year old son, Braylin, present) almost on a weekly basis. The domestic violence offender treatment consisted of group therapy. *Page 9 
 {¶ 35} Among the issues that Baldwin was working on with James R. were how to improve his relationship with his wife, how to reduce stress in the relationship, finances, his past history of abuse, and how to make his current marital relationship abuse-free.
 {¶ 36} Testimony by Defiance County Sheriff Deputy Adam Shafer established that on July 17, 2007, months after James R.'s treatment had begun, there was a disturbance at James R.'s home, which involved a verbal altercation between James R. and his wife. In response to the disturbance, Shafer instructed James R. to leave the residence for the evening. No charges were filed against either party.
 {¶ 37} Shafer testified that there was another disturbance at the residence of James R. and Dronecia on October 30, 2007. Both James R. and Dronecia were charged with disorderly conduct for engaging in a verbal altercation, but this time Dronecia was the one who was asked to leave the residence.
 {¶ 38} Defiance County Sheriff Sergeant Steve Flory testified that on October 31, 2007, he was dispatched to Sue Lane Baldwin's office, where James R. and Dronecia were receiving marriage counseling. When Flory arrived, Dronecia reported that James R. had threatened that everyone in the family was "going to go down in a blaze." No charges were filed. Instead, the officer transported James R. away from the therapist's office, stopped at his home so that he could get some belongings, and then took him back into town so that he could stay with his sister for the evening.
 {¶ 39} Baldwin testified as follows about the October 31, 2007 marriage counseling session. She stated that on that day, Dronecia had spoken of being afraid of *Page 10 
her husband because he had told her that he would take the family out in a blaze. Concerned for Dronecia's safety and the safety of the child that still resided with her, Baldwin suggested that Dronecia enter a domestic violence shelter. She also contacted law enforcement. In addition, she discharged James R. for lack of progress.
 {¶ 40} According to Baldwin, James R., at the time of his discharge, had not resolved any of the issues that he had been referred to counseling for. Baldwin testified that James R.'s behavior was escalating, and that she saw him as volatile. She also stated that, in her 15-year career as a counselor, she had contacted police to intervene in a therapy session only one other time.
 {¶ 41} In addition to the foregoing, the record establishes — apparently incongruously — that on December 19, 2007, James R. was successfully discharged from his domestic violence offender group therapy. Baldwin addressed this apparent incongruity in her testimony, stating that the group therapy, unlike marriage counseling, relies upon the self-reporting of the offender to determine whether and how what is learned in therapy is applied to the offender's own life. With marriage counseling, on the other hand, the counselor is able to see, firsthand, the interaction between the husband and wife, making the marriage counselor better able to understand the entire family dynamic.
 {¶ 42} Regarding James R.'s mental health, Baldwin testified that she had previously diagnosed him with post traumatic stress disorder, due to his service in Iraq, and adjustment disorder with disturbance of conduct. She further testified that *Page 11 
disturbance of conduct predominantly manifests in conduct in which there is a violation of rights of others or of other major age-appropriate societal norms and rules, such as reckless driving, fighting, or defaulting on legal responsibilities.
 {¶ 43} James R., himself, acknowledged that he still suffers from panic and anxiety attacks, and that he is attempting to seek treatment for that at the Veteran's Administration Hospital in Fort Wayne, Indiana.
 {¶ 44} Agency caseworker Mendieta testified that James R. has been a "no call" or "no show" for visits some 20 times since he returned from Iraq in March 2007. In response to this testimony, James R. offered testimony to the effect that he had to miss visitations because his job with the Ohio Reserves resulted in his being called at the last minute for military duty, and because he had had car trouble during the entire month of January and no other means of transportation.
 {¶ 45} Testimony by Mendieta indicated that James R. had ample opportunity to notify him or the agency when he needed to attend guard duty, but failed to do so. Mendieta further testified that James R. never asked that the visitation schedule be changed to accommodate his military schedule. According to counselor Baldwin, Dronecia stated in therapy that she had numerous friends that were willing and able to provide him transportation.
 {¶ 46} According to guardian ad litem Hoffman, Macey R. is angry with her father because he fails to show up for most of his visits. Hoffman further stated that both *Page 12 
Macey R. and Corey R. do not want to return home and would like to be adopted into a new family where they will feel safe.
 {¶ 47} Following the permanent placement hearing, the trial court conducted an in camera interview with the children.
 {¶ 48} The court, upon consideration of all of the evidence, rendered its decision, awarding permanent custody of Macey R. and Corey R. to the agency for purposes of adoptive placement. Specifically, the trial court found that there was clear and convincing evidence that the children cannot and should not be placed with either parent within a reasonable period of time pursuant to R.C. 2151.414(E)(1), (2), and (4), and that an award of permanent custody to the agency was in the children's best interest pursuant to R.C. 2151.414(D).
 {¶ 49} The court further found that the agency made reasonable efforts to prevent the need for out-of-home placement in that the parents were offered case plan services, including diagnostic assessments, substance abuse assessments, substance abuse treatment, mental health counseling, marriage counseling, domestic violence counseling, case plan management, and visitation. In addition, the court found that, "although these services were offered, the conditions that caused the removals of the children from the mother's care and subsequently from the father's care have not been remedied and the children cannot be returned to either parent within a reasonable period of time." Finally, the court found that reasonable efforts were made to finalize a permanency plan for the children by filing and prosecuting the motion for permanent custody. *Page 13 
 {¶ 50} James R. timely filed an appeal, raising the following sole assignment of error:
 {¶ 51} I. "THE TRIAL COURT'S FINDING THAT PERMANENT CUSTODY SHOULD BE AWARDED TO LUCAS COUNTY CHILDREN SERVICES [sic] PURSUANT TO O.R.C. § 2151.414(D) (E) WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 52} A court's decision to terminate parental rights will not be reversed as being against the manifest weight of the evidence as long as the record contains competent credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.In re S. (1995), 102 Ohio App.3d 338, 345; Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus; see, also, In the matterof: Amber M, 6th Dist. No. WM-05-003, 2005-Ohio-4172, ¶ 59.
 {¶ 53} Issues involving the weight of the evidence and the credibility of witnesses are primarily for the trier of fact. As the court explained in Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77: "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." Id., at 80.
 {¶ 54} R.C. 2151.353 controls the disposition of a child determined to be dependent, neglected or abused. Pursuant to that statute, a court may enter any order of *Page 14 
disposition provided for in R.C. 2151.353(A), including an order committing the child to the permanent custody of a public children services agency. But before the court can grant permanent custody of a child to a public services agency the court must determine: (1) that the child cannot be placed with one of his parents within a reasonable time or should not be placed with a parent, pursuant to R.C. 2151.414(E); and (2) that the permanent commitment is in the best interest of the child, pursuant to R.C. 2151.414(D). R.C. 2151.353(A)(4); see, also, In theMatter of Carlos R. III, 6th Dist. No. L-07-1194, 2007-Ohio-6358, ¶ 21.
 {¶ 55} R.C. 2151.414(E) provides that a court, in determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, shall consider all relevant evidence. R.C. 2151.414(E) additionally provides that if the court determines by clear and convincing evidence that any one of 16 factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time or should not be placed with the parent. Id. Those factors include:
 {¶ 56} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider *Page 15 
parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 {¶ 57} "(2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the [permanent custody hearing].
 {¶ 58} "* * *
 {¶ 59} "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
 {¶ 60} "* * *
 {¶ 61} "(16) Any other factor the court considers relevant." R.C. 2151.414(E).
 {¶ 62} Clear and convincing evidence is that evidence which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proven. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 63} With respect to determining the best interest of the child, R.C. 2151.414(D) directs that the court shall consider all relevant factors, including: *Page 16 
 {¶ 64} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 65} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 66} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 67} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 68} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 69} Upon a thorough review of the record in this case, we conclude that the trial court's determinations that Macey R. and Corey R. could not be placed with their father within a reasonable time and should not be placed with him, and that permanent custody was in Macey R.'s and Corey R.'s best interest, were supported by clear and convincing evidence.
 {¶ 70} In the instant case, James R. challenges the trial court's finding, made pursuant to R.C. 2151.414(E)(1), that he failed continuously and repeatedly to *Page 17 
substantially remedy the conditions causing Macey R. and Corey R. to be placed outside of their home. As indicated above, at the time the children were removed from the home, James R. had longstanding and ongoing problems with domestic violence. Although the evidence showed that he had been successfully discharged from domestic violence group therapy, testimony by marriage counselor Sue Lane Baldwin established that during the seven-month period that she was providing counseling to him — a period during which he was also attending domestic violence group therapy — his problem with domestic violence continued to persist, and even worsened, until, ultimately, Baldwin discharged him for lack of progress. On the basis of the foregoing, we conclude that the record reflects that James R. has not successfully alleviated his domestic violence issues.
 {¶ 71} At the very least, the record reflects that James R.'s marriage counseling — in particular, the domestic violence aspect of that counseling — was never successfully completed. The law is clear in Ohio that failure to complete significant aspects of a case plan, despite opportunities to do so, is itself a sufficient basis for terminating parental rights. In re G.S., 10th Dist. No. 05AP-1321, 2006-Ohio-2530, ¶ 15. Accordingly, we find that there was clear and convincing evidence to support the trial court's findings, under R.C. 2151.414(E)(1), that James R. failed to remedy the conditions that caused Macey R. and Corey R. to be removed from the family home.
 {¶ 72} Arguing against this conclusion, James R. points out that his youngest child, Braylin (whose mother is Dronecia, and not Victoria R.), has not been removed from his care. We initially note that any issue concerning James R. and Braylin, who *Page 18 
lives with his parents in Defiance, Ohio, would not come under the jurisdiction of the agency in this case, which serves the citizens of Lucas County. More importantly, the mere fact that Braylin continues to live in James R.'s home does nothing to refute abundant evidence in the record demonstrating that there is ongoing domestic violence between James R. and his wife. As indicated above, on October 31, 2007, counselor Baldwin was concerned for the safety of not just Dronecia, but also little Braylin.
 {¶ 73} In light of our determination that the trial court's decision was adequately supported under R.C. 2151.414(E)(1), we need not address appellant's additional arguments concerning R.C. 2151.414(E)(2) and (4).
 {¶ 74} For all of the foregoing reasons, appellant's sole assignment of error is found not well-taken and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 1