DECISION AND JUDGMENT
{¶ 1} This is an appeal is from a judgment of the Lucas County Court of Common Pleas, which terminated the parental rights of appellant, Nichole G., to her daughters, Brianna R. and Celecia G. The court also denied the motion of Tamara J., Nichole's mother, for legal custody of Brianna and Celecia. Upon consideration of the assignments of error, we affirm the decision of the lower court. *Page 2 
 {¶ 2} In April 2006, Nichole was living with her boyfriend, Mario, and her two younger daughters. Apparently, the only heat in the home was provided by an open oven. While Nichole was in the shower, Mario brought Celecia into the bathroom. The child had severe burns on the backs of her hands. Mario told Nichole that Celecia must have put her hands in the oven. According to Nichole, she wanted to take Celecia to the hospital, but Mario told Nichole that she should not do that because Lucas County Children Services ("LCCS") would "take her away from you." Consequently, Nichole attempted to treat the burns herself.
 {¶ 3} Thereafter, LCCS received a referral indicating that Celecia had burns on her hands and that appellant failed to seek treatment for her child's burns. The referral also stated that Mario locked Celecia in a bedroom and was alternating between beating Nichole and raping her. The police were dispatched to Nichole's residence where they discovered Celecia with burned hands and bruised cheeks. She was taken to the hospital for treatment. Nichole and Mario were arrested on outstanding criminal warrants and charged with child endangerment.
 {¶ 4} On April 28, 2006, LCCS filed a complaint in dependency and neglect with regard to Brianna and in dependency, neglect, and abuse with regard to Celecia. The children services agency sought temporary custody of both children. The trial court found the children to be neglected and dependent on July 20, 2006 and awarded temporary custody to LCCS. A case plan was formulated for Nichole that addressed her domestic violence issues, ability to parent, lack of stable housing, and her substance *Page 3 
abuse (alcohol and marijuana). The paternity of Celecia was never established; however, a case plan was instituted for Brianna's father, George R., who was in prison at the time. George was later released but never fully complied with his case plan.
 {¶ 5} On March 9, 2007, LCCS filed a motion asking the court to terminate the parental rights of Nichole, George, and Danny B.[1], Cecelia's putative father, and to award permanent custody of Brianna and Celecia to that agency. Over the next year a number of hearings were held on the motion for permanent custody. On February 4, 2008, Tamara filed a motion to intervene and for legal custody of her two youngest granddaughters. Tamara already had legal custody of Nichole's oldest daughter, Alexis, who was nine years old at the time of the custody hearings. After holding a final hearing on both motions, the juvenile court denied Tamara's motion for legal custody, terminated the parental rights of Nichole, George, and Danny, and awarded permanent custody of Brianna and Celecia to LCCS.
 {¶ 6} Both Nichole and Tamara appeal the judgment of the trial court. They assert the following assignments of error:
 {¶ 7} "I. The trial court erred in granting appellee Lucas County Children Services' motion for permanent custody as the decision was against the manifest weight of the evidence. *Page 4 
 {¶ 8} "II. The trial court abused its discretion and committed prejudicial error when the court denied appellant Tamara's motion for legal custody since it would be in the best interests of the children for custody to be awarded to a suitable family member."
 {¶ 9} In Assignment of Error No. I, Nichole maintains that the trial court's judgment is against the manifest weight of the evidence because she was in substantial compliance with her case plan and because insufficient evidence was offered to establish that she has antisocial personality disorder, a condition that, at best, would take two more years to treat. Nichole also claims that the trial court's decision is against the manifest weight of the evidence on the issue of whether it was in the best interest of her daughters to award permanent custody to LCCS.
 {¶ 10} R.C. 2151.353 controls the disposition of a child determined to be dependent, neglected, and/or abused. Pursuant to that statute, a court may enter any order of disposition provided for in R.C. 2151.353(A), including an order committing the child to the permanent custody of a public child services agency. Before the court can grant permanent custody of a child to a public services agency, however, the court must determine, by clear and convincing evidence, that: (1) the child cannot be placed with one of her parents within a reasonable time or should not be placed with a parent, pursuant to R.C. 2151.414(E); and (2) an order of the permanent custody to the child services agency is in the best interest of the child, pursuant to R.C. 2151.414(D). R.C. 2151.353(A)(4); see, also, In re: Carlos R., 6th Dist. No. L-07-1194,2007-Ohio-6358, ¶ 21. *Page 5 
 {¶ 11} R.C. 2151.414(E) sets forth those conditions which, if shown by clear and convincing evidence, support a R.C. 2151.414(E) finding. In the case before us, the juvenile court relied on R.C. 2151.414(E)(1) and found that, notwithstanding reasonable case plan services and diligent efforts by the agency, the conditions which caused the removal of the children were not remedied. Additionally, the trial court found, pursuant to R.C. 2151.414(E)(4), that Nichole demonstrated a lack of commitment to her children.
 {¶ 12} In reaching its decision on the question of whether Nichole remedied the conditions that caused the removal of her daughters from her custody, the trial court was required to consider whether Nichole utilized the "medical, psychiatric, psychological, and other social and rehabilitative services made available to" her for the purpose of changing her parental conduct so that she could resume and maintain her parental duties. R.C. 2151.414(E)(1). The testimony offered at trial revealed that while, over the two year period that this case was pending, Nichole completed her domestic violence class, and appeared to have stable housing due to the fact that she was residing with Dan, her most recent boyfriend (as of May 2008), she never successfully completed substance abuse treatment.
 {¶ 13} Specifically, Nichole never attended recommended Alcoholics Anonymous meetings. She missed more than one urine drop during the two year period and in January 2008 tested positive for opiate use. She was discharged as being unsuccessful from Fresh Attitudes, a substance abuse program, in June 2007. Nichole reengaged in that program within a month but was, once again, discharged as being unsuccessful in *Page 6 
March 2008 after failing to comply with a behavior contract she signed in February 2008. In signing the behavior contract, Nichole agreed to attend her substance abuse sessions. She did not do so. Indeed, during the permanent custody hearing, Nichole herself testified that she did not think that using marijuana "was a problem."
 {¶ 14} Even though she finished the parent education portion of her plan, Nichole never progressed to interactive parent education with her children. Her visits with Brianna and Celecia were limited to those provided by LCCS. Moreover, she accumulated an extensive criminal history during the pendency of this cause. This history included convictions for child endangerment, petty theft, shoplifting, possession or use of a controlled substance, two driving with a suspended license offenses, and a reckless operation of a motor vehicle offense. She also had probation violations and, at the time of the final hearing, had outstanding warrants for failure to appear in court on some of the aforementioned cases. Furthermore, she failed to pay a number of fines totaling approximately $900. Nichole still had some of these criminal cases pending in the Toledo Municipal Court and one case pending in the Oregon Municipal Court.
 {¶ 15} Nichole testified that she wanted Brianna and Celecia to reside with Tamara until all of her "court litigations are taken care of and the substance abuse is taken care of." Finally, Nichole did not have steady employment. At the permanent custody hearing she asserted that she is performing at home bookkeeping services for two small businesses, earning between $900 to $1,200 per month. *Page 7 
 {¶ 16} Based upon the foregoing, we conclude that there was more than enough clear and convincing evidence offered at the trial court level to support the juvenile judge's findings under R.C. 2151.414(E)(1) and (4). In other words, the clear and convincing evidence offered at trial established that Nichole was not in "substantial compliance with her case plan." Moreover, even if we were to presume, as argued by Nichole, that the diagnosis of a personality disorder was not supported by the evidence offered at trial, we find that the same would be harmless error. In particular, in the face of the overwhelming evidence that Nichole failed to remedy those conditions which caused the removal of her children from her care and lacked a real commitment to her daughters, such error, if any, in admitting the contested evidence would not affect the outcome of this case. See In re: Link, 4th Dist. Nos. 05CA23, 05CA24, 05CA25, 2006-Ohio-529, ¶ 60-61.
 {¶ 17} R.C. 2151.414(D) provides that in considering the best interest of a child in a permanent custody hearing, "the court shall consider all relevant factors, including, but not limited to the following:
 {¶ 18} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 19} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; *Page 8 
 {¶ 20} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 21} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 22} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 23} Nichole does not argue that the evidence offered at trial does not support any specific one of these factors; rather, she contends that due to her current ability to care for her children and their strong bond, it would be in their best interest to return them to their mother's care. We disagree. On July 1, 2008, the date of the final permanent custody hearing, Brianna and Celecia were respectively, five and three years old. At that time, they had already been in the custody of LCCS for over two years and were living in a foster home with a family who wished to adopt them. Brianna, at five years old, is in counseling for developmental delays. The children's guardian ad litem testified that sometimes Brianna expressed a wish to reside in her foster home and at other times stated that she wanted to be with "Momma Nichole." The guardian ad litem, however, did recommend that permanent custody of the two girls be awarded to LCCS. *Page 9 
 {¶ 24} In addition, throughout these court proceedings Nichole herself requested that temporary legal custody of her daughters be awarded to their maternal grandmother until such time that Nichole finished her substance abuse program, dealt with all of her legal problems, and was, therefore, capable of raising her daughters herself. This could extend these young children's time out of their mother's custody for an unknown and potentially lengthy period. Clearly, Brianna and Celecia need a legally secure placement and, from the evidence offered at trial, this could not be achieved without awarding permanent custody to LCCS. Accordingly, the juvenile court's finding that it is in the best interest of these children to make said award is supported by clear and convincing evidence, and Assignment of Error No. I is found not well-taken.
 {¶ 25} In Assignment of Error No. II, Tamara urges that the trial court abused its discretion when it denied her motion for legal custody of her two younger granddaughters. Relatives who seek legal custody of a child in Ohio "`are not afforded the same presumptive rights that a parent receives as a matter of law.'" In re A. V., 10th Dist. No. 05AP-789, 2006-Ohio-3149, ¶ 40. (Citation omitted.) As observed by this court:
 {¶ 26} "The standard of proof in a case where a juvenile court is determining whether to award legal custody of a child to a nonparent is not clear and convincing evidence. In re A. W.-G., 12th Dist. No. CA2003-04-099, 2004-Ohio-2298, ¶ 7, citing In re Nice,141 Ohio App.3d 445, 455, 2001-Ohio-3214. Because the parent retains residual parental rights, such as visitation, and has the opportunity to seek the return of her *Page 10 
children, the standard of proof is a preponderance of the evidence.In re: Alexander C, 164 Ohio App.3d 540, 2005-Ohio-6134, ¶ 6. (Citation omitted.) Thus, after a child is adjudicated abused, neglected, or dependent, the court may award legal custody of the child to a nonparent upon a demonstration, by a preponderance of the evidence, that legal custody is in the child's best interest. Id." In re Christopher M., 6th Dist. No. L-06-1063, 2007-Ohio-1040. ¶ 12.
 {¶ 27} Our review of a trial court's decision to award or not award legal custody of a child to a relative is whether the trial court abused its discretion. Id. at ¶ 13. (Citation omitted.) An abuse of discretion implies that in reaching its decision, the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 28} Here, Tamara points out that she and her husband are the legal custodians of Alexis, who, at nine years of age, is doing very well both scholastically and socially. Tamara obtained legal custody of Alexis when Nichole was convicted of felonious assault and imprisoned. Tamara maintains that because she has steady employment, that she and her husband live in an appropriate home, and that she has a strong marriage, it would be in the best interest of Brianna and Celecia to be placed in her legal custody.
 {¶ 29} Tamara never filed her motion for legal custody until it became clear that LCCS would, in all likelihood, prevail on its motion for permanent custody of her younger granddaughters. The record of this cause reveals that Tamara has a great love for her daughter, Nichole, and would do almost anything to help her. In fact, when *Page 11 
Nichole needed financial assistance, Tamara, who had had a good job for over 20 years, started to sell drugs from her home in order to provide Nichole with those finances. Tamara was arrested, entered a plea, and spent a year in prison. She still owes $6,000 in fines associated with her conviction. At trial, Tamara acknowledged the fact that she put Alexis in danger through her actions, but claimed that even though her granddaughter missed her while she was away, Alexis did not seem to be affected by her grandmother's crime. Tamara now has a job as a cook during the early part of the day and her husband, John, the children's step-grandfather, provides the care for Alexis during that time.
 {¶ 30} Tamara admitted that since the time she obtained legal custody of Alexis, and after her daughter was released from prison, she allowed Nichole to have unsupervised visitation with the child. She asserted, however, that if Nichole did not continue to change her way of life, Nichole would not be allowed to visit with her children, "even at my house." When asked why she had not applied this rule to Alexis, Tamara replied that Alexis is older than her sisters, has "a good head on her shoulders," and would tell her grandmother if Nichole had done anything negative during their visit.
 {¶ 31} John did not file a motion for legal custody of Brianna and Celecia. He testified that he and Nichole did not get along in the past due to her behavior. John did state that due to Nichole's stable relationship with Dan, he and Tamara allowed Alexis to spend nights and, sometimes, long weekends, at her mother's home. When asked if he would allow Alexis to spend nights with Nichole if Dan was not in her life, John was hesitant because he did not know what kind of environment Nichole would provide. *Page 12 
 {¶ 32} Based upon all of the testimony offered at trial, the juvenile judge expressed concern over the fact that granting Tamara's motion for legal custody would not terminate parental rights and allow the parents' intrusion into the rearing of their children thereby posing a risk of physical and/or emotional risk to Brianna and Celecia. He therefore concluded that it would be in their best interest not to grant Tamara's motion for legal custody. Based upon our review of the transcript of this cause, especially the testimony of Tamara and John as set forth above, we cannot say that the lower court's attitude in reaching its decision was unreasonable arbitrary, or unconscionable. Consequently, Assignment of Error No. II is found not well-taken.
 {¶ 33} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants, Nichole G. and Tamara J. are ordered to pay the costs of this appeal in equal shares pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4. *Page 13 
Peter M. Handwork, J., William J. Skow, P.J., Thomas J. Osowik, J., Concur.
[1] Danny B. never appeared in this action. 3. *Page 1